Yvonne Ross MITCHELL,
Alvin E. Mitchell

v.

EXXON CORPORATION, Exxon Company USA, Tommy Bryson, Mike Harris, Pam Moore, Bruce Curr, Mark Sechler, Doug Harrison.

Civ. A. No. 94–406–A.

United States District Court,
M.D. Louisiana.

Dec. 13, 1995.

Dennis Alan Pennington, Steven P. Monaghan, Baton Rouge, Louisiana, for Plaintiffs.

Charles S. McCowan, Jr., Vance A. Gibbs, Belinda B. LeBlanc, Glenn M. Farnet, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, LLP, Baton Rouge, Louisiana, John R. Schupp, William B. Matthews, Jr., Michelle T. Morris, Exxon Corporation, New Orleans, Louisiana, for Defendants.

## RULING ON MOTION FOR SUMMARY JUDGMENT

JOHN V. PARKER, Chief Judge.

This matter is before the court on a motion by defendant, Exxon Corporation, for summary judgment. Plaintiffs oppose the motion and defendant has filed a reply brief to the opposition. The court finds that there is no need for oral argument. This court has previously examined the allegations of the original petition, received affidavits and other evidence and concluded that it has removal jurisdiction based upon diversity of citizenship since plaintiffs have "fraudulently joined" as defendants co-employees who are non-diverse in citizenship. *Mitchell v. Exxon Corp.*, 860 F.Supp. 332 (M.D.La.1994).

This action was doomed from its inception. It represents one of the currently more popular activities by Louisiana lawyers—an attempt to avoid the statutory tort immunity in industrial accidents which has been granted to employers by the Louisiana legislature. Predicated upon the "intentional act" exception to employer immunity set forth in La.R.S. 23:1032(B), plaintiffs would have the court believe that the employer, Exxon, intentionally blew up its "east coker" unit at Exxon's Baton Rouge refinery, causing injuries to employees such as plaintiff, Yvonne Mitchell, as well as to others, and causing millions of dollars in damage to Exxon's own property. The proposition is *reductio ad absurdum*. Plaintiff was injured (very seriously) in an industrial *accident*,[1] pure and

---

1. It is undisputed that plaintiff, Yvonne Mitchell, herself, through error, opened the wrong valve

simple, for which her medical expenses and workers' compensation benefits are being paid by her employer in accordance with Louisiana law.

That is precisely the way the state's statutory compensation scheme is supposed to work.

Louisiana, in 1914, became one of the first states in the nation to enact a workers' compensation statute. This "social legislation" was adopted, according to the Supreme Court of Louisiana, ". . . for the joint benefit of labor and management . . ." See *Atchison v. May*, 201 La. 1003, 10 So.2d 785, 788 (La.1942). Essential to any compensation scheme is payment of benefits without regard to fault. As succinctly described in H.A. Johnson, III, Workers' Compensation Law and Practice, § 32, in 13 Louisiana Civil Law Treatise (3rd Ed.1994):

> "Compensation, then, differs from the conventional damage suit in two important respects: fault on the part of either employer or employee is eliminated; and compensation payable according to a definitely limited schedule is substituted for damages. All compensation acts alike work these two major changes, irrespective of how they may differ in other particulars.
>
> Compensation, when regarded from the viewpoint of employer and employee, represents a compromise in which each party surrenders certain advantages in order to gain others which are of more importance both to him and to society. The employer gives up the immunity he otherwise would enjoy in cases where he is not at fault, and the employee surrenders his former right to full damages and accepts instead a more modest claim for bare essentials, represented by compensation."

Louisiana has provided one narrow exception to the otherwise exclusive remedy provisions of its workers' compensation statute. La.R.S. 23:1032(B) provides:

> "Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, **resulting from an intentional act**." (Emphasis supplied)

Plaintiffs in this case seek to drive a Mack truck through that narrow window by repeating over and over the incantation, "resulting from an intentional act."

As discussed in this court's prior ruling in this case, there has evolved a sort of ritual in Louisiana practice in cases of this type, following the decision of *Mayer v. Valentine Sugars, Inc.*, 444 So.2d 618 (La.1984). An employee injured in a work place accident for which workers' compensation benefits are due and payable, files suit in tort against the employer (or a fellow employee) alleging "intentional act" several times. Although the petition lacks any factual background to support a conclusion of "intentional act", the court overrules an exception of no cause of action filed on behalf of the employer. There follows a period of discovery, after which the court grants the employer's motion for summary judgment on the basis that the undisputed material facts demonstrate that there is no factual support for the claim of "intentional act" and that the injured worker's exclusive remedy against the employer is workers' compensation benefits. See discussion in *Mitchell v. Exxon*, 860 F.Supp. 332, 334–335 (M.D.La.1994).

By this time the employee's lawyer (who has taken the case on a contingent fee contract) has advanced large sums of money in litigation expenses and the employer has spent even more money establishing the actual facts which were obfuscated by the "intentional act" allegations of the original petition.

The whole exercise has come to naught after fruitless time, effort and money expended by plaintiff and his lawyer and a needless drain upon the treasury of the employer, not to mention the useless expenditure of limited judicial resources in resolving issues that never should have been presented in the first place.

Plaintiffs here seek to forestall the otherwise inevitable demise of this litigation by

thus setting in motion the scenario which caused the fire and explosion that injured her.

tendering the affidavit of a person said by plaintiffs to be an expert in "human factors".

That affidavit proves the point.

The "expert witness" opines [2] that all humans commit mistakes ("to err is human"); Exxon employs humans to operate the equipment at its east coker plant; it was therefore "inevitable" that some human would someday (not "if", but "when") commit an error which would cause injury and damage of the kind described by plaintiff; ergo, Exxon intended to blow up its own plant and to cause injury to plaintiff.

Despite cautions by some Louisiana courts [3], Louisiana lawyers continue to bring litigation which has no chance of ultimate success once the magic words and artful pleadings are probed, pierced and stripped away.

█ It ought to be obvious to anyone that absent the most egregious of circumstances (sabotage in the face of an invading foreign army is the only example which comes to mind), no plant owner will intentionally destroy or badly damage its own plant facility. No degree of carelessness, negligence, or even gross negligence can, or ever will, amount to "an intentional act" so long as those words remain a part of the English language.[4]

Litigation such as this serves not the legal profession, the judicial system, the injured worker or the public interest. This court strongly suggests that Louisiana lawyers devote their best efforts to ferret out and establish those exceptional cases [5] where an employer or an executive officer has truly injured an employee by means of an intentional act. As "officers of the court," lawyers should forego filing time consuming, expensive litigation which has no actual chance of success. Surviving the first round of exceptions does not equate to success.

The court has carefully reviewed all the pleadings, briefs and exhibits with attachments and concludes that the defendant has set forth undisputed material facts in its statement of facts as follows:

(1) At all pertinent times, the plaintiff was an employee of Exxon Corporation. The plaintiff was injured while performing duties in the normal course and scope of her employment with Exxon.

(2) The plaintiff was injured when a fire occurred on the east coker unit at Exxon's refinery on April 1, 1993. The fire occurred during a drum "switch" operation.

(3) The fire occurred because the plaintiff opened the wrong valve and unit feed escaped and ignited.

(4) The specific tasks to be performed during a drum switch are described in the Exxon's "Coke Drum Switch and Steam Out Procedures," a copy of which is attached to the motion as Exhibit "A."

(5) The plaintiff received comprehensive training from Exxon concerning drum switch procedures. The plaintiff's training included 5 months of classroom training, in which the importance of following instructions and checking and double-checking was stressed. After the five months of classroom training, she received six weeks of "hands-on" training specific to the coker unit and her assistant

---

2. The words used in the text are largely those of the undersigned, not the "expert witness"; the conclusion, however, is precisely that stated by the "expert witness" in his affidavit. Needless to say, this court would not allow that "expert witness" to qualify or to testify.

3. *Babin v. Edwards,* 456 So.2d 659, 662 (La.App. 1st Cir.1984), writ denied, 460 So.2d 604 (La. 1984): "Although uniformly unsuccessful, litigation has been spawned by the case of *Bazley v. Tortorich,* 397 So.2d 475, 481 (La.1981), ..."

4. In *Landry v. Uniroyal Chemical Co., Inc.,* 653 So.2d 1199, 1203 (La.App. 1st Cir.1995), writ denied 660 So.2d 461 (La.1995), the court point-

ed out that "... allegations of failure to provide a safe place to work, deficiently designed machinery and disregard of OSHA safety provisions, failure to correct unsafe working conditions, and failure to provide specifically requested safety equipment are not sufficient to invoke the intentional act exception of La.R.S. 23:1032(B) ..."

5. This court does not imply that there are no cases where an employer or fellow employee may be liable for an intentional act. The court merely declares the obvious: those cases will be rare. They will be exceptionally rare among cases of this type, where the "intentional act" requires the fact finder to conclude that the employer intentionally destroyed its own plant.

operator duties. This included "hands-on" training specific to drum switching.

(6) The plaintiff was trained to communicate by radio with the operator prior to critical steps of the drum switch, including confirming the proper drum pair involved in the switch prior to executing the switch.

(7) After completing her training, plaintiff worked on the coker unit approximately six weeks before the fire, and performed approximately sixty (60) drum switches.

(8) On the morning of April 1, 1993, the plaintiff and Glenmar Smith were assigned to execute the switch from the "A" drum to the "B" drum as part of their normal operating shift duties. The plaintiff proceeded to the one-hundred forty-one foot (141') level to switch the flow of "flushing oil" from the "A" drum to the "B" drum. When she reached the 141' level, the plaintiff proceeded to the correct drum and made the proper valve alignments.

(9) After completing her duties on the 141' level, the plaintiff proceeded to the fifty-five foot (55') level of the structure. When she reached this level, however, the plaintiff went to the incorrect drum. She went to the "C" drum instead of the "A" drum.

(10) After aligning certain valves, the plaintiff proceeded to an electronic switch panel on the 55' level. The panel contains an electronic switch that activates the valve which controls the flow or feed to the drum pair.

(11) The switch panel is clearly labeled to identify the drum pair to which it pertains.

(12) The plaintiff proceeded to the incorrect switch panel.

(13) The plaintiff activated the wrong switch valve, which caused the unit feed to escape and ignite.

While plaintiffs quibble with some of the details of Exxon's undisputed facts, their response makes clear that the material facts are indeed, undisputed.

Exxon's memoranda, although overly long and extending beyond the material facts set forth in its statement of facts, correctly set forth sufficient applicable law so that the court concludes that the defendant is entitled to judgment as matter of law. The court does not consider those extraneous facts which are added to Exxon's discussions.

Accordingly, the motion for summary judgment on behalf of defendant, Exxon Corporation, is hereby GRANTED and this action will be dismissed.