Ulysses PATE and Kathy Pate

v.

ADELL COMPOUNDING, INC., DSM Copolymer, Inc., Aristech Chemical, Inc., and John Doe Manufacturing Company.

Civil Action No. 97–132–B–M1.

United States District Court, M.D. Louisiana.

July 14, 1997.

Kirby J. Guidry, Baton Rouge, LA, Joseph Jerry McKernan, McKernan Law Firm, Baton Rouge, LA, for Ulysses Pate, Kathy Pate.

Charles W. Borde, Jr., Charles W. Borde, Jr., Attorney Judge, Ward II City Court, Denham Springs, LA, Sherry Powell Crain, Associate of Charles W. Borde, Denham Springs, LA, for Adell Compounding, Inc.

Vance A. Gibbs, Barrye Panepinto Miyagi, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Baton Rouge, LA, for DSM Copolymer, Inc.

John R. Tharp, David Mark Bienvenu, Jr., Taylor, Porter, Brooks & Phillips, Baton Rouge, LA, for Aristech Chemical, Inc.

## RULING ON PLAINTIFFS' MOTION TO REMAND

POLOZOLA, District Judge.

This matter is before the Court on the plaintiffs' motion to remand. Defendants timely removed this suit from the Twenty First Judicial District, Parish of Livingston, State of Louisiana.[1] For the reasons which follow, the plaintiffs' motion to remand is denied.

### I. FACTUAL AND PROCEDURAL HISTORY

On September 20, 1996, plaintiffs, Ulysses and Kathy Pate, filed this suit in state court against Adell Compounding, Inc. ("Adell"), DSM Copolymer, Inc. ("Copolymer"), Aristech Chemical, Inc. ("Aristech"), and John Doe Manufacturing Company.[2] The plaintiffs seek damages from the defendants arising from an accident in which Ulysses' arm was severed at the elbow when his sleeve got caught in a roller of a strand puller at the Adell facility where he worked as an assistant operator.[3] Adell was Ulysses Pate's employer at the time of the incident. Copo-

---

1. Suit number, 77,537 B.

2. John Doe defendants are ignored under the Federal Rules of Civil Procedure.

3. Plaintiffs' Petition for Damages, ¶¶ 4 and 5.

lymer, the previous owner of the facility, was sued as the manufacturer and/or designer of the strand puller Ulysses Pate was operating on the day of his injury. . The plaintiffs charged that Copolymer was negligent in failing to warn of the dangerous characteristics of the strand puller. In addition, the plaintiffs allege Aristech was negligent. The plaintiffs contend that Adell was manufacturing Aristech's product at the time of Ulysses Pate's injury. The plaintiffs claim Aristech was negligent after making a safety inspection of the equipment because Aristech failed to follow up and require the installation of safety features which would have prevented Ulysses Pate's accident.[4]

On February 19, 1997, Aristech and Copolymer removed the case to federal court pursuant to 28 U.S.C. §§ 1441 and 1446. The basis for subject matter jurisdiction is diversity pursuant to 28 U.S.C. § 1332. There is no dispute the jurisdictional amount required by 28 U.S.C. § 1332 has been met. However, the controversy in this matter centers around the question of complete diversity of citizenship of the parties.

In the initial notice of removal, the defendants claimed complete diversity existed in this case since the plaintiffs were Louisiana citizens and the defendants, Aristech and Copolymer, were not Louisiana corporations for purposes of diversity. The defendants claimed Aristech was incorporated in Delaware with its principal place of business in Pennsylvania, and Copolymer was incorporated in Delaware with its principal place of business in Delaware.[5] Despite the fact the third named defendant, Adell, was a citizen of Louisiana, Aristech and Copolymer insist-ed complete diversity was still present because Adell was fraudulently joined. On March 3, 1997, Aristech, with leave of court, filed an amended notice of removal. In this amended notice of removal, Aristech corrected an error which was made in the first removal regarding the Copolymer's principal place of business. Aristech admitted in the amended notice of removal that Copolymer's principal place of business was in Baton Rouge, instead of Delaware, at the time of the accident.[6] Thus, Copolymer must be considered a Louisiana defendant for determining diversity jurisdiction.[7] Nevertheless, Aristech urged that complete diversity was present in this case because both non-diverse defendants, Adell and Copolymer, were fraudulently joined. The Pates filed this motion to remand insisting Adell and Copolymer were not fraudulently joined, and therefore, this Court lacks subject matter jurisdiction because the parties were not completely diverse as required by 28 U.S.C. § 1332.

## II. ANALYSIS

### A. Statement of the Law of Fraudulent Joinder

■ The removing party bears the heavy burden of demonstrating that the desired joinder is fraudulent and that the district court has subject matter jurisdiction to hear the claim.[8] Although it is not within the Court's province to attempt to resolve factual disputes regarding matters of substance,[9] the Court is empowered to "pierce the pleadings" to determine whether the non-removing party has a legitimate claim against tie non-diverse party under the governing state

4. Plaintiffs' Petition for Damages, ¶ 22.

5. Defendants Notice of Removal, ¶ 6.

6. Aristech's Amended Notice of Removal, §§ I and II. Specifically, paragraphs six and nine of the original notice of removal were amended. In their Memorandum in Support of the Motion for Leave of Court to Amend Removal Pleadings, the defendants asserted that shortly after removal, Copolymer's counsel learned its principal place of business was in Baton Rouge. In a footnote, defendants explained the parties originally believed there was complete diversity in this matter based on an "incorrect report form the Secretary of State's office."

7. 28 U.S.C. § 1332(c)(1).

8. *Ford v. Elsbury*, 32 F.3d 931, 935 (5th Cir. 1994); *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir.), *cert. denied*, 510 U.S. 868, 114 S.Ct. 192, 126 L.Ed.2d 150 (1993); *Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 100 (5th Cir.) *cert. denied*, 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990); *Collins v. AAA Rent All, Inc.*, 812 F.Supp. 642, 643 (M.D.La.1993).

9. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 551 n. 14 (5th Cir.1981).

law.[10] In addition, because claims of fraudulent joinder in the Fifth Circuit are disposed of in a summary judgment-like procedure, the Court is authorized to consider evidence outside the pleadings, such as affidavits and depositions accompanying the notice of removal or the motion to remand.[11] The standard is clear: "After all disputed questions of fact and all ambiguities in the controlling state law are resolved in favor of the non-removing party, the court determines whether that party has any possibility of recovery against the party whose joinder is questioned."[12]

The Court now turns to the issue of whether Adell and Copolymer were fraudulently joined in this case.[13]

## B. Was Adell Compounding, Inc. fraudulently joined?

■ In order to prove fraudulent joinder, Aristech must prove there is no possibility the Pates can recover against Adell in this tort action. The defendants claim Adell, as the plaintiff's employer, is immune from Ulysses Pate's tort suit pursuant to the Louisiana Workers' Compensation Act.[14] Louisiana Revised Statutes 23:1032 provides that workers' compensation benefits are the exclusive remedy of an employee against an employer for injuries arising out of and in the course and scope of his employment. This immunity from tort actions, however, does not apply when the employee's injuries are the result of an intentional act.[15]

It is undisputed that Ulysses Pate was an employee in the course and scope of his employment at the Adell facility when he was injured. Yet, the Pates contend that the Louisiana Workers' Compensation Act does not bar this suit against Ulysses Pate's employer because Ulysses Pate's injury was caused by an intentional tort committed by Adell.[16]

Thus, this Court must determine whether there is any possibility that the Pates can recover from Adell for an intentional tort. In *Guillory v. Domtar Industries Inc.*,[17] the Fifth Circuit noted "[c]ourts narrowly interpret the intentional act loophole to the workers' compensation system."[18] In that case, an employee was injured after being struck on the head by a fork that fell from a forklift. On a motion for summary judgment, the Court found the employer did not intend to injure the employee and, therefore, the employee was prevented by the exclusivity provisions of workers' compensation law from recovering against the employer in tort. The Guillory court remarked, even if the falling forks created a "'high probability' of injury, this would not establish 'intent' sufficient to bypass the workers' compensation system."[19] The Fifth Circuit held an employer's knowl-

---

10. *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 271 (5th Cir.1992).

11. *Carriere*, 893 F.2d at 100; *B., Inc.*, 663 F.2d at 549 n. 9.

12. *Carriere*, 893 F.2d at 100. Stated another way, there is no fraudulent joinder if there is arguably a reasonable basis for predicting that a Louisiana state court might impose liability on the non-diverse defendant under the facts of the case. *Jernigan*, 989 F.2d at 816.

13. This Court has addressed the issue of fraudulent joinder in a number of recent opinions. See e.g. *Hornsby v. AlliedSignal*, 961 F.Supp. 923 (M.D.La.1997) and *McCowan v. U.S. Repeating Arms, Co., Inc.*, Number 96–7574 (M.D.La.1997).

14. La. R.S. 23:1032, et seq.

15. La. R.S. 23:1032(B). *See Charkhian v. National Environmental Testing, Inc.*, 907 F.Supp. 961 (M.D.La.1995).

16. La. R.S. 23:1032(B).

17. 95 F.3d 1320 (5th Cir.1996).

18. *Guillory*, 95 F.3d at 1328 (citing *Bridges v. Carl E. Woodward, Inc.*, 663 So.2d 458 (La.App. 4th Cir.1995), *writ denied*, 666 So.2d 674 (La. 1996)).

19. *Guillory*, 95 F.3d at 1328 (citing *Armstead v. Schwegmann Giant Super Markets, Inc.*, 618 So.2d 1140, 1142 (La.App. 4th Cir.1993), *writ denied*, 629 So.2d 347 (La.1993)). The Fifth Circuit went on to note that in order to "qualify for the very narrow intent exception, Louisiana jurisprudence requires a strong link between the employer's conduct and the employee's injury." (citing *Williams·v. Gervais F. Favrot Co.*, 573 So.2d 533, 541 (La.App. 4th Cir.), *writ denied*, 576 So.2d 49 (La.1991)). The *Guillory* Court found the parties in that case failed to provide this link in the summary judgment evidence.

edge of falling forks by itself cannot establish intent on the part of the employer.[20]

Any discussion of intentional tort in Louisiana must include the Louisiana Supreme Court's decision in *Bazley v. Tortorich*.[21] In *Bazley*, the Court declared an act is considered intentional whenever it is shown that the defendant either "consciously desired" the physical result of his conduct or was "substantially certain" that those physical results would follow from his actions.[22] The Fifth Circuit in *Guillory* further noted "the substantially certain test is satisfied when an employer consciously subjects an employee to a hazardous or defective work environment where injury to the employee is nearly inevitable—that is, injury is 'almost certain' or 'virtually sure' to occur or is incapable of being avoided."[23]

This Court discussed the precepts of *Bazley* in *Charkhian v. National Environmental Testing, Inc.*,[24] a case with facts very similar to the instant case. On a motion to remand in *Charkhian*, the plaintiff argued the intentional act exception to the Workers' Compensation Act allowed tort recovery against three co-employees who were allegedly fraudulently joined. This Court found the co-employees were fraudulently joined, reasoning there was no possibility that the plaintiff could recover against the three co-employees for intentional acts. This Court observed that the plaintiffs in that case did nothing more than allege that the plaintiff's co-employees "committed intentional torts" and failed to introduce any evidence in support of their motion to remand which indicated the co-employees were at least substantially certain the plaintiff would be injured.[25] This Court noted that it is well-established under Louisiana law that the use of the word "intentional" is "not a talisman which auto-

matically raises allegations of negligence to the level of intentional tort."[26]

In an earlier opinion, *Carriere v. Sears, Roebuck and Co.*,[27] the Fifth Circuit, on a motion to remand, also found a co-employee was fraudulently joined to defeat federal jurisdiction. The plaintiffs in that case were the survivors of a security guard who was killed while investigating suspicious activity on the employer's loading dock. The plaintiffs argued the non-diverse employee defendant committed an intentional act by failing to accompany the security supervisor to the loading dock. The plaintiffs produced an affidavit of the non-diverse employee defendant in support of their intentional tort claim. The affidavit indicated that, after the tragic murder, the non-diverse defendant "wished" he had accompanied the deceased to the docks to assist him. The plaintiffs argued this proved a possibility of recovery against the non-diverse defendant for an intentional tort. The Fifth Circuit found this was not enough to allow a fact finder to infer the non-diverse defendant knew or was substantially certain that harm would befall the deceased. Even viewing the facts most favorably to the plaintiffs, the *Carriere* Court ruled the plaintiffs could not possibly recover from the non-diverse defendant, and this non-diverse defendant was fraudulently joined.

Before this Court can resolve the fraudulent joinder issue in the instant case, it is necessary for this Court to examine the original state court petition and any evidence submitted with this motion to remand regarding the intentional tort claim against Adell. Louisiana follows a system of fact pleading that requires the plaintiff to set forth facts in his petition that support each claim made.[28] In resolving fraudulent joinder claims, however, a federal district court

---

**20.** *Guillory*, 95 F.3d at 1327.

**21.** 397 So.2d 475 (La.1981).

**22.** *Bazley*, 397 So.2d at 481.

**23.** *Guillory*, 95 F.3d at 1327 (citing *Kent v. Jomac Products, Inc.*, 542 So.2d 99, 100 (La.App. 1st Cir.1989)).

**24.** 907 F.Supp. 961 (M.D.La.1995).

**25.** *Charkhian*, 907 F.Supp. at 965.

**26.** *Charkhian*, 907 F.Supp. at 965 (citing *Keating v. Shell Chem. Co.*, 610 F.2d 328, 332 (5th Cir. 1980)).

**27.** 893 F.2d 98 (5th Cir.1990), *cert denied*, 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990).

**28.** *Mitchell v. Exxon Corp.*, 860 F.Supp. 332 (M.D.La.1994).

"is not handcuffed by the 'well pleaded allegations' of the state court petition."[29] The appropriate procedure to be used by the federal court in assessing a fraudulent joinder claim is similar to that used for ruling on a motion for summary judgment.[30] A federal district court is empowered to consider summary judgment-type affidavits or depositions as well as the factual allegations of the state court petition to determine whether the non-removing party has a legitimate claim against the non-diverse party under the applicable law.

The Pates' petition states:

8. Upon information and belief, ADELL's supervisors and principals knew of the dangerous propensity of the strand puller with unguarded pinch points and lack of warning placards, but made a conscious decision not to perform the necessary safety alterations to the machine; and, further, made a conscious decision to continue to require its employees to operate the machine in its obviously unsafe condition.

9. Upon information and belief, plaintiffs allege that ADELL intentionally caused the injuries suffered by PATE. Under the doctrine of respondeat superior, ADELL is held to have known of the dangerous propensities and defective design of the strand puller, and knew that an accident resulting in the nature of PATE's injuries was substantially certain to occur when someone was required to operate equipment which was so unreasonably dangerous and unsafe.

10. Plaintiffs, further allege that ADELL's total disregard for PATE's safety and its conscious decision to not provide any safety guards on the strand puller constitute an intentional act under the provisions under La.R.S. 23:1032(B); and that ADELL is precluded from availing itself of the provisions of the Louisiana Workers Compensation Act, La. R.S. 23:1, et seq, which grants immunity from tort liability to the employer.

The only evidence submitted by the plaintiffs is the affidavit of Ulysses Pate wherein he attests the allegations in his petition are true and correct. This Court is not bound by the conclusory allegations of "intentional tort" in the Pates' motion to remand.[31] The Pates have failed to point to any specific facts or offer any evidence which even hints of any specific facts which support their intentional tort claim against Adell.

▋ Accordingly, just as the Fifth Circuit found in *Carriere*, this Court concludes the Pates' allegations and evidence in the instant matter are insufficient to allow a fact finder to infer that Adell knew or was substantially certain that Ulysses Pate would be injured on the strand roller.[32] Viewing the facts most favorable to the plaintiffs, this Court finds an employer's knowledge of a work place risk to an employee does not constitute "intent" under the intentional act exclusion.[33] Therefore, this Court finds there is no reasonable basis for predicting that a Louisiana state court might impose liability on Adell on the plaintiffs' intentional tort theory.[34] Similar conclusions were

**29.** *Mitchell*, 860 F.Supp. at 335.

**30.** *Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98 (citing *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 n. 9 (5th Cir.1981)).

**31.** *Bourque v. Nan Ya Plastics Corp.*, 906 F.Supp. 348 (M.D.La.1995).

**32.** 893 F.2d 98, 101 (5th Cir.1990). *See also Mitchell*, 860 F.Supp. at 336.

**33.** *Bourque*, 906 F.Supp. at 352 (citing *Tapia v. Schwegmann Giant Supermarkets, Inc.*, 590 So.2d 806 (La.App. 4th Cir.1991)); *Bankston v. BASF Corp.*, 827 F.Supp. 1239, 1240 (citing *Waldrop v. Vistron Corp.*, 391 So.2d 1274 (La.App. 1st Cir. 1980)); *Courtney v. BASF Wyandotte Corp.*, 385 So.2d 391 (La.App. 1st Cir.), *writ denied*, 386

So.2d 359 (1980). In *Bourque*, Judge Parker found "[k]nowledge by an employer that it utilizes hazardous chemicals and that there is a potential in the work place for accidental discharge of those products does not constitute an 'intentional act' under Louisiana law."

**34.** *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 816 (5th Cir.), *cert. denied*, 510 U.S. 868, 114 S.Ct. 192, 126 L.Ed.2d 150 (1993). See generally, the second opinion in the case of *Mitchell v. Exxon Corp.*, 907 F.Supp. 198 (M.D.La.1995). In this opinion, the Court discussed the trend of lawyers who attempt to avoid statutory tort immunity in industrial accidents. In *Mitchell*, the plaintiffs argued that Exxon Corp. intentionally blew up its east coker unit at Exxon's Baton Rouge refinery. This proposition, the Court said, is "reductio ad absurdum."

reached in several analogous cases out of the Middle District in the last few years.[35] Because the intentional tort exception of the Louisiana Workers' Compensation Act bars the Pates from recovering against Adell in tort, this Court holds there is no possibility of recovery against Adell in this case. Thus, the Court finds, under the evidence presented in this case, Adell was fraudulently joined as a defendant herein.

## C. Was DSM Copolymer, Inc. fraudulently joined?

Before this Court discusses the merits of whether Copolymer was fraudulently joined, this Court must first address the plaintiffs' contention that Copolymer lacks standing to raise any objection. The plaintiffs maintain, because Copolymer is an in-state defendant, it is a "non-party" and has no standing to remove and seek jurisdiction in the federal courts. The Pates cite Judge John Parker's opinion of *Jewell v. Dudley L. Moore Ins.*[36] in support of their position. This Court agrees with the analysis in *Jewell* and with the plaintiffs' general assertions. However, the plaintiffs overlook one very significant point. The plaintiffs insist Copolymer has no standing to remove since it is an in-state defendant. However, the amended notice of removal makes it clear that Aristech Chemical,

Inc. was the only party that removed the matter. Aristech specifically avers in paragraph three of the amended removal notice that Copolymer joined in the amended notice of removal solely to correct the allegations regarding its principal place of business. Thus, this Court finds there is no standing problem since it was Aristech, the diverse defendant, and not Copolymer, the non-diverse defendant, that removed this case.

The Court now turns to the merits of the Copolymer fraudulent joinder inquiry. In their petition for damages, the plaintiffs contend Copolymer, as the previous owner of the Adell facility, was the manufacturer and/or designer of the strand puller that Ulysses Pate was operating at the time of his injury. The plaintiffs submit an affidavit by Ulysses Pate attesting that all of the allegations in the petition are true and correct.[37] The Pates insist Copolymer is a "manufacturer" under the Louisiana Products Liability Act [38] and is liable to Ulysses Pate for failure to warn him of the dangerous characteristics of the machine which caused his injuries.[39]

Aristech, on the other hand, argues the plaintiffs have no possibility of recovering against Copolymer on this theory because the strand puller alleged to have injured Ulysses Pate was never owned, operated or manufactured by Copolymer. In fact, Aris-

**35.** *Bourque v. Nan Ya Plastics Corp.*, 906 F.Supp. 348 (M.D.La.1995) (holding that a worker who was injured when his hand was caught in a plastic press and burned by molten polyvinyl chloride could not establish a cause of action against a non-diverse defendant under the intentional act exception to workers' compensation exclusivity, and, therefore, the non-diverse defendants co-workers were fraudulently joined); *Mitchell v. Exxon Corp.*, 860 F.Supp. 332 (M.D.La.1994) (holding employee who suffered damages as a result of fire and explosion that occurred on the job could not establish a cause of action against non-diverse co-employee defendants under the intentional act exceptions to the workers' compensation exclusivity provision, and, therefore, defendant co-employees were fraudulently joined); *Mitchell v. Exxon Corp.*, 907 F.Supp. 198 (M.D.La.1995) (in the same case on summary judgment, the Court held that the employer did not commit an "intentional act" which would lift the bar of suit under the Louisiana Workers Compensation Act); *Bankston v. BASF*, 827 F.Supp. 1239, (M.D.La.1993) (holding in an employee's action to recover for injury sustained during work against the employer and

other defendants did not state an intentional tort claim against contractor).

**36.** 872 F.Supp. 1517 (M.D.La.1995). In *Jewell*, the Court noted a "federal court lacks the power to act upon any substantive motions submitted by a non-diverse party in a diversity case or to exercise subject matter jurisdiction over that party in any fashion." The non-diverse party in *Jewell* filed a notice of deposition instead of a motion. The Court found that since a non-diverse party has no real interest in the federal court proceedings, the non-diverse defendant lacks standing to participate. The *Jewell* Court held the magistrate judge erred by ordering plaintiff to submit to a deposition to be taken under notice issued by a non-diverse defendant.

**37.** Plaintiffs' Memorandum In Support of Remand, Exhibit A, Affidavit of Verification of Pleadings, Ulysses Pate.

**38.** La. R.S. 9:2800.51, et seq.

**39.** Plaintiffs' Memorandum In Support of Remand, p. 4.

tech submitted two affidavits from Hal Ginn [40] and Keith Mathern [41] in support of its contention. Both Ginn and Mathern affirm that they worked at the former Copolymer facility and were familiar with the strand puller that was located at the Copolymer facility. Ginn and Mathern further state the strand puller involved in Ulysses Pate's accident at the Adell facility was not the same strand puller present at the Copolymer facility. According to Ginn and Mathern, the two strand pullers are totally different pieces of machinery.

The plaintiffs have not set forth any summary judgment-type evidence or any other facts which would establish that there is a possibility that Copolymer could be held liable in this case. The plaintiffs only rely on the general allegations that Copolymer owned the facility prior to Adell. The Pates argue the device which caused the injury has "no manufacturer's marks nor serial numbers, indicating that in all probability it was fabricated locally." [42] The plaintiffs claim they have offered "contradictory evidence" with Ulysses Pate's affidavit. In his affidavit, however, as previously discussed, Ulysses Pate merely attests that "to the best of his knowledge, with the information available to him at the present time, the allegations contained in said petition are true and correct." The allegations in the pleadings regarding Copolymer and Ulysses Pate's affidavit are conclusory at best and fail to highlight any specific facts in support of the Pates' claim against Copolymer. [43]

In further support of their position, the plaintiffs maintain that Ginn's affidavit "confirms" that the device in question was in the manufacturing facility when it was sold to Adell by Copolymer. The plaintiffs cite paragraph three of Ginn's affidavit. This Court is unclear how paragraph three, or the whole affidavit for that matter, supports the Pates' argument that the device in question was at the facility when it was sold to Adell by Copolymer. Paragraph three Ginn's affidavit details the time frame and hours Ginn worked at the former Copolymer facility. In paragraph three, Ginn states, "I am was very familiar with all of the equipment in the facility, including *a device known as the strand puller*." [44] The affidavits of Ginn and Mathern detail the differences between the strand puller present when Copolymer owned the facility and the strand puller involved in Ulysses Pate's injury. [45] The plaintiffs have produced no evidence or facts which contradict this evidence.

■ The Fifth Circuit in *Burden v. General Dynamics Corp.*, made it very clear that a court must look beyond the plaintiffs' arguments about the facts and examine the specific facts and evidence which have been submitted to a court to determine if there is any possibility of recovery against an allegedly fraudulently joined defendant. [46] As noted earlier, however, a removing party bears a heavy burden of proving fraudulent joinder. Considering the facts and evidence submitted to this Court in the light most favorable to the plaintiff, this Court concludes there is no possibility that the plaintiffs can recover against Copolymer. The plaintiffs entire claim against Copolymer is based on the fact that Copolymer had some type of relationship with the strand puller involved in Ulysses Pate's accident. The uncontradicted affi-

---

40. Defendant's Memorandum in Opposition of Remand, Exhibit A ("Ginn's Affidavit").

41. Defendant's Supplemental Memorandum in Opposition of Remand ("Mathern's Affidavit").

42. Plaintiffs Memorandum In Support of Remand, p. 3.

43. Copolymer is mentioned in only a few numbered paragraphs of the petition for damages. Paragraph 11 states: "Upon information and belief, Copolymer is the previous owner of the facility presently being operated by Adell, and sold to Adell the manufacturing facility and the equipment including the strand puller located in Denham Springs." Paragraph 13 states: "Upon

information and belief, Copolymer is the manufacturer and/or designer of the product known as the strand puller which Pate was operating the day of his injury." Finally, Paragraph 14 states: "Defendant, Copolymer, is liable to Pate for its failure to warn of the dangerous propensity and characteristic of the strand puller."

44. Emphasis added.

45. See Ginn's Affidavit, ¶ 6; Mathern's Affidavit, ¶¶ 4–7.

46. 60 F.3d 213, 218 (5th Cir.1995).

**550**

davits of Ginn and Mathern maintain that the strand puller in question was never present at the Copolymer facility.[47] Accordingly, the Court believes there is no reasonable basis for predicting a Louisiana state court might impose liability on Copolymer under the facts of this case.[48] Thus, the Court finds Aristech has carried its heavy burden of proving there is no possibility that the Pates can recover from Copolymer under the facts of this case. Therefore, the Court holds that Copolymer was fraudulently joined in this case to defeat diversity jurisdiction.

## CONCLUSION

This Court has not undertaken the task of determining whether the Pates *will prevail* on the merits. Instead, this Court has examined whether there was *any possibility* for the Pates to recover against Adell and Copolymer.[49] Despite Aristech's heavy burden, this Court holds that the two non-diverse defendants in this matter, Adell and Copolymer, were fraudulently joined to defeat diversity jurisdiction. The remaining parties in this matter, the Pates and Aristech, are completely diverse under 28 U.S.C. § 1332. Therefore, the Court finds it has subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1332. Accordingly, the plaintiffs' motion to remand this case for lack of subject matter jurisdiction is denied

THEREFORE

**IT IS ORDERED** that the plaintiffs, motion to remand, be and it is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Copolymer and Adell be dismissed as defendants in this case for reasons set forth above.

---

**47.** See e.g. *Bourque v. Nan Ya Plastics Corp.*, 906 F.Supp. 348, 353 (M.D.La.1995) (finding fraudulent joinder, the court accepted statements of two individuals as uncontradicted since the plaintiff "had not alleged any facts to dispute them").

**48.** *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 816 (5th Cir.), *cert. denied*, 510 U.S. 868, 114 S.Ct. 192, 126 L.Ed.2d 150 (1993).

