Thomas Richard BROWN, Appellant,

v.

PENNZOIL–QUAKER STATE COMPANY, Appellee.

No. 01–04–00137–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 18, 2005.

Rehearing Overruled Oct. 24, 2005.

Alton C. Todd, The Law Firm of Alton C. Todd, Friendswood, Levon G. Hovnatanian, Martin, Disiere, Jefferson & Wisdom, L.L.P., Houston, TX, for Appellant.

Joel Z. Montgomery, Baker Botts, L.L.P., Karlene Dunn Poll, Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, KEYES, and BLAND.

## OPINION

EVELYN V. KEYES, Justice.

Appellant, Thomas Richard Brown, appeals from the trial court's judgment rendered upon appellee Pennzoil–Quaker State Company's (Pennzoil's) no-evidence motion for summary judgment. In two issues on appeal, Brown asserts that the trial court erred in rendering summary judgment on his claims for (1) an "intentional act" and (2) spoliation of evidence. We affirm the judgment in part, reverse it in part, and remand the cause.

## Background

On January 18, 2000, an explosion occurred at Pennzoil's refinery in Shreveport, Louisiana. Four people were injured, including Brown, a Pennzoil employee working at the refinery at the time of the accident. Brown sustained burns to over 85% of his body. Upon investigation of the accident, the Occupational Safety and Health Administration (OSHA) determined that the O2B heat exchanger had ruptured, causing a fire and explosion of hydrocarbons. Although the unfortunate events occurred in Louisiana, Brown filed suit against a variety of defendants in Harris County, Texas. Pennzoil later intervened in the suit to recover damages for the partial destruction of its refinery. After settling with some of the defendants, Brown asserted claims against Pennzoil.

In his fourth amended petition, Brown asserted causes of action against Pennzoil based on the following allegations: (1) Pennzoil committed intentional torts by knowing that Brown's injuries were substantially certain to follow from its conduct and (2) Pennzoil intentionally destroyed evidence. Brown specified that Pennzoil failed (1) to test the heat exchanger for chloride levels; (2) to properly maintain the shell of the heat exchanger; (3) to test for shell thickness of the heat exchanger; (4) to discontinue operations without the water-wash system being in service; (5) to stop operations when a nearby valve failed and the water-wash system was down; (6) to remove the heat exchanger from service; and (7) to warn of the danger of the explosion.

On December 23, 2002, Pennzoil filed a no-evidence motion for summary judgment. It asserted that Brown had no evidence that an intentional act had occurred and that there was no evidence that Pennzoil was substantially certain Brown would be injured as a result of its conduct. In opposition to the motion, Brown submitted an affidavit, depositions, and OSHA materials to raise a fact issue. On April 30, 2003, the trial court, without stating its reasons, granted Pennzoil's motion for summary judgment and dismissed all of Brown's claims against Pennzoil. Brown filed a motion for reconsideration on June 2, 2003. Pennzoil responded, stating that no new evidence was presented. On September 19, 2003, Brown filed a supplemental motion for reconsideration. The trial court denied Brown's motion for reconsideration on September 26, 2003. This appeal followed.

## Standard of Review

A no-evidence motion for summary judgment is essentially a directed verdict granted before trial, to which we apply a legal sufficiency standard of review. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex.2003); *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70 (Tex.App.-Austin 1998, no pet.). In general, a party seeking a no-evidence summary judgment must assert that no evidence exists as to one or more of the essential elements of the non-movant's claims on which it would have the burden of proof at trial. *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.-Austin 2000, no pet.). Once the movant specifies the elements on which there is no evidence, the burden shifts to the non-movant to raise a fact issue on the challenged elements. TEX.R. CIV. P. 166a(i). A no-evidence summary judgment will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch*, 118 S.W.3d at 751. We view the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *Id.*

A no-evidence summary judgment is improperly granted if the non-movant brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Id.* When the evidence supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions, more than a scintilla of evidence exists. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). A defendant who moves for summary judgment need only negate one element of the plaintiff's cause of action. *See Gibbs v. Gen. Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970).

## Evidence

In his first issue, Brown asserts that the trial court erred in rendering a

no-evidence summary judgment in Pennzoil's favor on his claim that he was injured by Pennzoil's "intentional act." We disagree.

### Louisiana Law

■ The parties agree that Louisiana law applies. Thus, we apply the substantive legal principles of Louisiana law. *Robin v. Entergy Gulf States, Inc.*, 91 S.W.3d 883, 885 (Tex.App.-Beaumont 2002, pet. denied). Nevertheless, we apply the Texas standards of appellate review. *Id.*; *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 71.031(b) (Vernon Supp.2004–2005).

Since 1914, Louisiana has had worker's compensation laws, but employees were formerly able to pursue additional remedies against their employers. *See Reeves v. Structural Pres. Sys.*, 98–1795 (La.3/12/99), 731 So.2d 208, 209. In 1976, however, the Louisiana Legislature amended the Workers' Compensation Act ("Act") to provide that workers' compensation shall be the exclusive remedy not only against the employer, but also against any principal, officer, director, stockholder, partner, or employee of the employer or principal who was engaged at the time of the injury in the normal course and scope of his employment. *See* LA.REV.STAT. ANN. § 23:1032(A)(1)(a) (West 1998); *see also Reeves*, 731 So.2d at 209–10. The Act provides:

> Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages, including but not limited to punitive or exemplary damages, unless such rights, remedies, and damages are created by a statute, whether now existing or created in the future, expressly establishing same as available to such employee, his personal representative, dependents, or relations, as against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.

LA.REV.STAT. ANN. § 23:1032(A)(1)(a). The legislature also provided an exception, namely that the employee is not limited to workers' compensation and may pursue any other remedy when his compensable injury resulted from an intentional act. *See id.* § 23:1032(B) (West 1998); *Reeves*, 731 So.2d at 210.

In this suit, Brown alleged that Pennzoil committed an intentional act, invoking the exception to the exclusive remedy provision provided for in section 1032(B) of the Act. This intentional act exception states,

> Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an *intentional act*.

LA.REV.STAT. ANN. § 23:1032(B) (emphasis added).

Under Louisiana law, a person acts with "intent" if the person either

(1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or

(2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result.

*Reeves*, 731 So.2d at 211.[1]

■ Louisiana courts narrowly construe the intentional act exception. *See id.* The "substantial certainty" element requires more than a reasonable probability that an injury will occur; rather "certain" has been defined to mean "inevitable" or "incapable of failing." *Id.* at 213. An employer's mere knowledge that a machine is dangerous and that its use creates a high probability that someone will eventually be injured is not sufficient to meet the substantial certainty requirement. *Id.* Furthermore, mere knowledge and appreciation of a risk does not constitute intent; nor does reckless or wanton conduct by an employer constitute intentional wrongdoing. *Id.* Gross negligence does not meet the intentional act requirement. *Id.* at 211–12. "Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, or willfully failing to furnish a safe place to work, this still falls short of the kind of actual intention to injure that robs the injury of accidental character." *Id.* at 210 (quoting Larson, 2A *Workmen's Compensation Law*, § 68.13 (1989)).[2]

### Contentions of the Parties

In its motion for summary judgment, Pennzoil asserted there was no evidence to show that it acted with knowledge to a

virtual certainty that Brown would be harmed at its facility. Essentially, Pennzoil argued that Brown presented no evidence that it knew an explosion would cause injury that was substantially certain to follow from its conduct.

Brown presented the following evidence to raise a material fact issue in response to Pennzoil's motion for summary judgment: (1) OSHA documents showing violations of OSHA safety regulations at Pennzoil's refinery; (2) the affidavit of Charles Hellier; and (3) the deposition testimony of Richard Nichols, Cliff Bigelow, Frank Johnson, Ed Juno, and William Taylor. We now review Brown's evidence to determine whether he raised a genuine issue of material fact as to Pennzoil's intentional act.

### OSHA Evidence

Brown points out that, after the explosion, OSHA fined Pennzoil $202,500 for three willful and three serious violations at its refinery. The three serious violations included (1) deficiencies with Pennzoil's Process Safety Management Program; (2) a violation that addressed mechanical integrity; and (3) Pennzoil's "failure to properly inspect pressure vessels after corrosion problems were identified." One of the willful violations included Pennzoil's failure to identify and to address all known hazards and potential hazards related to corrosion in pressure vessels.

### Affidavit of Charles Hellier

---

1. Our review of Pennzoil's intent is limited to subsection (2) because the parties agree that Brown's pleadings alleged the subsection (2) definition of intent only.

2. The legislative history of section 1032 is also enlightening. The House rejected two amendments to section 1032. First, it rejected an amendment to award double the normal compensation against an employer when the death, injury, or disease was caused by the employer's violation of a recognized safety

rule or regulation, failure to provide a safety device required by a recognized safety rule or regulation or by a statute, or by gross negligence on the part of a supervisory employee. *See Reeves*, 731 So.2d at 210. Second, the House rejected an amendment that would have allowed an exception to the Act if the injury or compensable sickness or disease was caused by the gross negligence of the said party or parties. *See id.*

Genesis Crude Oil, L.P.'s[3] expert, Charles Hellier, stated in his affidavit that

[Pennzoil's] inspection program failed to comply with the American Petroleum Institute's recommendations and did not comport with industry standards. Specifically, Pennzoil's testing program failed to focus on areas in which corrosion problems and/or failures occurred in the past and inspections failed to take a representative number of samples which would allow for an accurate historical comparison.

### Deposition Testimony

#### Richard Nichols

Richard P. Nichols, a senior engineer for Pennzoil, was responsible for inspecting and monitoring corrosion. He testified that corrosion could occur in any exchanger at any time. Nichols agreed that corrosion would occur in a heat exchanger as a result of the laws of nature and that corrosion occurs because of chemicals in the process and the metals, air, and moisture. He admitted that before January 18, 2000, he knew that corrosion would occur in the heat exchangers. He also admitted that it was important to evaluate the level of corrosion to maintain the shell's integrity. He stated that testing the integrity of the metal was performed to avoid a breach and that, in the absence of testing, a catastrophic event could occur.

Nichols testified that organic chlorides in the crude were the primary cause of the explosion that injured Brown. He also testified that the water-wash system[4] was important and that a failure to use it could potentially lead to corrosion. He stated

that the water-wash system was not operating in January, 2000.

#### Cliff Bigelow

Cliff Bigelow, an engineer for Material Analysis, Inc., testified that "certainly at some time if corrosion advances to the point where it can no longer contain the pressure that it's designed for, then [a breach] would be the ultimate result." In that case, the breach would be inevitable. Bigelow opined that the cause of the heat exchanger's failure was metal wastage due to corrosion caused by hydrochloric acid.

#### Frank Johnson

Frank Johnson, a mechanical engineer for Pennzoil, testified that Pennzoil knew in 1971, when it installed the heat exchanger, that corrosion would occur and was inevitable. He testified that Pennzoil knew the vessel would continue to thin from corrosion, but that periodic testing would enable Pennzoil to predict the thinning, so that, when Pennzoil retired the heat exchanger, the heat exchanger would still have substantial wall thickness. He stated that, "based on the '98 data ... an event like that should not have occurred at all."

#### Ed Juno

Ed Juno, the Director of Optimization at Pennzoil's Shreveport refinery, testified that, sometime after 1999, the refinery started to purchase high sulfur crude oil to reduce the "feedstock cost of the plant." Because ammonium salts could build up in the heat exchanger, the refinery had a policy of running the water-wash system continuously to wash the salts off. Juno was aware that the water-wash system had had problems in 1998 and that Pennzoil had modified the system to use sour water.

---

**3.** Brown originally brought suit against Genesis Crude Oil; it sued Pennzoil only after Genesis settled prior to trial. Genesis is not a party to this appeal.

**4.** Salts accumulate on the surface of the heat exchangers. The water-wash system washes the salts away.

Juno testified that, in the absence of a water wash, ammonium salts and ammonium chlorides could lead to under-deposit corrosion in a heat exchanger, but that under-deposit corrosion was a very slow corrosion mechanism. Juno agreed that the organic chlorides level was higher than he wanted.

*William Taylor*

William Taylor, a senior engineering inspector for Pennzoil, was responsible for inspecting the Naphtha Unifiner and heat exchangers. He testified that Pennzoil had a policy of performing full turnaround inspections every three years on its heat exchangers. In 1998, Pennzoil performed an on-stream inspection instead of a full turnaround inspection[5] because the industry had changed to allow on-stream inspections every five years. One of Taylor's colleague's, Jimmy Dupuy, recommended a full turnaround inspection in 1998, but Pennzoil did not perform this inspection because Dupuy did not give enough reasons why it should be done. In an incident interview statement, Taylor stated that he was not notified that crude with a higher chloride or sulfur count was entering the facility for processing.

## Analysis

### Intentional Act

In his opposition to the summary judgment motion, Brown argued that the evidence showed that Pennzoil had actual knowledge of the corrosion, the inevitability of a failure or explosion, and the extreme danger posed by the inevitable failure or explosion. He further argued that the evidence showed Pennzoil's financial motivation for its disregard of the safety of its employees. On appeal, Brown argues that Pennzoil knew that the results of its conduct were substantially certain to follow from its conduct and that Pennzoil consciously subjected him to a hazardous work environment in which injury was inevitable.

Brown's evidence to support his cause of action for an intentional tort can essentially be grouped under five allegations: (1) Pennzoil violated its own safety policies and procedures; (2) Pennzoil failed to allow its employees to participate in the Safety Management program; (3) Pennzoil failed to adequately inspect the heat exchangers and failed to inspect the crude that entered its refinery; (4) Pennzoil failed to shut down the heat exchanger when the water-wash system was not operating; and (5) Pennzoil knew that corrosion would occur in the heat exchanger.

■ Brown's summary judgment evidence thus goes to establish that Pennzoil violated its own safety standards and procedures and that it knowingly permitted a hazardous condition to exist. However, the Louisiana Supreme Court noted in *Reeves* that the courts of appeals have almost universally held that employers are not liable under the intentional act exception for violations of safety standards or for failing to provide safety equipment. *Id.* at 211–12. "Violation of a statute alone is not per se such an intentional act as will result in the employer's tort liability if injuries are sustained by an employee because of the violation." *Mott v. River Parish Maint., Inc.,* 432 So.2d 827, 832 (La.1983). Thus, such evidence is insufficient to raise a material fact issue with respect to the intentional act exception to Louisiana's worker's compensation laws. *See Reeves,* 731 So.2d at 211–12; *Mott,* 432 So.2d at 832.

Brown acknowledges that the failure to provide a safe place to work, the disregard of OSHA safety provisions, and the failure

**5.** An on-stream inspection was less comprehensive than a full turnaround inspection.

to correct unsafe working conditions are alone not sufficient to invoke the intentional act exception of section 1032(B), but he argues that these failures are sufficient in combination with summary judgment proof of Pennzoil's knowledge that its conduct would nearly inevitably cause injury. Brown cites *James v. Red Simpson, Inc.*, 2003–0304 (La.App. 3 Cir. 10/01/03), 856 So.2d 115 and *Mouton v. Blue Marlin Specialty Tools, Inc.*, 2001–648 (La.App. 3 Cir. 10/31/01), 799 So.2d 1215. Although both cases restate the first half of Brown's proposition, neither case supports the second half. In both cases, the trial court granted summary judgment in favor of the employer. *See James*, 856 So.2d at 116; *Mouton*, 799 So.2d at 1217. The court of appeals affirmed the grant of summary judgment in both cases. *See James*, 856 So.2d at 118; *Mouton*, 799 So.2d at 1220. In neither case did the court of appeals conclude that a combination of lapses, together with a defendant's knowledge that a bad result would occur unless safety conditions were corrected, was sufficient to meet the intentional act exception.

Brown, however, contends that Louisiana courts have found an intentional act under similar circumstances. Although he cites numerous cases, he relies primarily upon three. We find these cases distinguishable on their facts.

In *Clark v. Division Seven, Inc.*, a foreman ordered two roofers to work on a wet roof. 99–3079 (La.App. 4 Cir. 12/20/00), 776 So.2d 1262, 1263, *writ denied*, 2001–0183 (La.3/16/01), 787 So.2d 318. At the time the roofers were working, light rain and occasional heavy rain would force them to stop. *Id.* Both workers told the foreman that it was too dangerous to resume work because of the weather conditions. *Id.* The foreman responded that they could either continue working or be fired. *Id.* One of the workers slipped on the roof and narrowly avoided falling off the three-story church on which they were working. The employee who slipped objected again to working, to which the foreman repeated that they needed to continue working or they would be fired. *Id.* at 1263–64. Although the other employee chose to be fired and left the worksite, the plaintiff stayed. *Id.* A short time later, the plaintiff slipped on the wet roof, fell to the ground, and was severely injured. *Id.* at 1264. The plaintiff sued, and the trial court rendered judgment in his favor. *Id.* The court of appeals affirmed, holding that when the foreman ordered the plaintiff to return to the wet, slippery roof shortly after the other roofer had slipped, the "circumstances indicated that injury to the plaintiff was inevitable or substantially certain to occur." *Id.*

Brown relies on *Clark* to show that Pennzoil had notice of the relevant hazard—without identifying the relevant hazard. To support the assertion that Pennzoil had notice, Brown refers us to OSHA reports stating that Pennzoil was aware of corrosion in the heat exchanger. He further cites to evidence of previous corrosion that was reported in 1982 and a prior accident that occurred 19 years ago at Pennzoil's refinery. Based on the OSHA reports showing previous instances of corrosion at the Pennzoil refinery, Brown argues that we should reverse the summary judgment because Pennzoil had more notice than the employer in *Clark*. We disagree.

*Clark* is distinguishable from the present facts for at least two reasons. First, the *Clark* facts occurred over a very short time period and under unchanged conditions, whereas here the long lapse of time—19 years—minimizes any notice from the prior accident. Second, in *Clark*, an event occurred that put the employer on notice of the specific hazard, *i.e.*, one

employee had already slipped and nearly fallen off the wet three-story roof. Here, Brown submitted no evidence, or no more than a scintilla of evidence, to show that Pennzoil was substantially certain that an explosion and subsequent injuries to its employees would occur as a result of its conduct. To the extent that Brown argues that Pennzoil had notice of corrosion in the heat exchanger and that the knowledge of corrosion made Pennzoil aware that an explosion would occur, we conclude that knowledge of corrosion in the heat exchanger is of no relevance because corrosion in a heat exchanger is a natural process; thus, mere knowledge of corrosion, without evidence that Pennzoil had notice that the corrosion had reached the point at which an explosion in the near future was substantially certain to occur, is no evidence that an explosion was about to occur.

Brown also cites *Wainwright v. Moreno's, Inc.* 602 So.2d 734 (La.App. 3 Cir. 1992). In *Wainwright,* the plaintiff was digging a 10–foot–deep ditch when it caved in. *Id.* at 736. The plaintiff sued his employer and the foreman who had ordered him to dig the ditch. *Id.* The trial court found that the plaintiff's employer and the foreman knew that the injuries to the plaintiff were substantially certain to result from their actions. *Id.* at 738. The appeals court affirmed, noting there was testimony that a cave-in had occurred the day before the accident. *Id.* at 739. Because of this cave-in, the employer had held a safety meeting at which the employees were told not to enter a ditch unless they could see out of it. *Id.* at 739. Additional evidence indicated that a cave-in was inevitable, including testimony from an engineer who stated that he had told a foreman that the soil was sloughing off the sides of the ditch and that no one should be allowed in the ditch without protection. *Id.* The engineer also told a superinten-

dent that the dirt was unstable and that "no one should be allowed in the ditch until they protected the ditch against a cave-in." *Id.* As in *Clark,* the evidence in *Wainwright* shows that the employer was aware of an accident that had occurred very recently—the day before—under the same conditions and that the employer ignored evidence of instability in the soil which indicated that another accident was substantially certain to occur and to cause injury to persons in the ditch.

Finally, Brown relies on *Bailey v. United Gas Pipe Line Co.* 27655 (La.App. 2 Cir. 12/6/95), 665 So.2d 664, *writ denied,* 96–0058 (La.2/28/96), 668 So.2d 372. In *Bailey,* the employee was killed while making repairs to a pipe coupling. *Id.* at 666. The employee's wife filed suit against his employer, contending that his employer had committed an intentional act. *Id.* The employer filed a motion for summary judgment, disputing that the employee's death was caused by an intentional act. *Id.* In response, the plaintiff submitted affidavits from two experts who both concluded that the course of conduct, combined with the weather conditions, made it substantially certain that the pipeline would fail, resulting in damages and injuries. *Id.* The trial court granted the summary judgment, finding that the experts' affidavits were inadmissible. *Id.* at 666–67. The appellate court held that, to prevail on summary judgment, a party must show that there is no genuine issue of material fact as to whether the employer intended to cause the death of the employee. *Id.* at 667. The appellate court then held that the record was replete with evidence, including the experts' affidavits, to show a genuine issue of fact. *Id.* at 667–68.

*Bailey* is distinguishable from the present facts because Bailey's expert witnesses testified that the employer's "course of conduct, combined with the weather condi-

tions, made it substantially certain that the pipeline would fail, resulting in damages and injuries." *Id.* at 666. Here, Brown did not present more than a scintilla of evidence that Pennzoil knew that conditions at the refinery were such that an explosion, causing injuries, was substantially certain to occur from its conduct. There was no evidence that Pennzoil was on notice that the heat exchanger was about to explode or that, knowing such danger, an employee of Pennzoil ordered Brown to work where he would be injured if the substantially certain explosion occurred. The closest that Brown came to surmounting its hurdle was through Nichols's testimony that, in the absence of proper testing to avoid a breach, "you *may* have a catastrophic event." This testimony does not meet the requirement of substantial certainty. *See Reeves,* 731 So.2d at 212 (stating, "Believing that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by worker's compensation"); *see also Guillory v. Domtar Indus. Inc.,* 95 F.3d 1320, 1327–28 (5th Cir.1996) (holding that no genuine issue of fact was raised as to employer's knowledge that employee's injury was substantially certain to follow from employer's actions); *Landry v. Uniroyal Chem. Co.,* 94–1274 (La.App. 1 Cir. 3/3/95), 653 So.2d 1199, 1203–04, *writ denied,* 95–1381 (La.9/15/95), 660 So.2d 461; *cf. Mitchell v. Exxon Corp.,* 907 F.Supp. 198, 200 (M.D.La.1995) ("[A]bsent the most egregious of circumstances . . . no plant owner will intentionally destroy or badly damage its own plant facility. No degree of carelessness, negligence, or even gross negligence can, or ever will, amount to 'an

intentional act' so long as those words remain a part of the English language."). The "substantial certainty" element requires more than a reasonable probability that an injury will occur. *Reeves,* 731 So.2d at 213.

After reviewing all of the evidence and arguments, we hold that Brown did not produce more than a scintilla of evidence of an intentional act. Accordingly, we conclude that the trial court properly granted Pennzoil's no-evidence motion for summary judgment on Brown's intentional act claim.

We overrule Brown's first issue on appeal.

### Spoliation of Evidence

■ In his second issue on appeal, Brown argues that the trial court improperly granted summary judgment on his spoliation of evidence claim because Pennzoil did not move for summary judgment on this claim.

We cannot uphold a summary judgment based on arguments that were not presented to the trial court by written motion. *See* Tex.R. Civ. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993) ("A motion must stand or fall on the grounds expressly presented in the motion.").

In his fourth amended petition, Brown added a claim for spoliation of evidence.[6] His petition states,

In addition to the allegations previously made herein, the evidence will show that [Pennzoil] has destroyed intentionally evidence upon which it relies to pursue its claim and defend the claim of [Brown]. [Pennzoil] should not benefit from its spoliation of the evidence. Ac-

6. The parties dispute whether Louisiana recognizes an independent cause of action for spoliation of evidence.

cordingly, [Brown] alleges a claim pursuant to Louisiana State Common Law for spoliation of the evidence which was a proximate and/or producing cause of damage and injury to [Brown].

On appeal, Pennzoil asserts that Louisiana has not clearly recognized the tort of spoliation of evidence under this set of facts. Thus, it contends that the trial court did not err in dismissing Brown's spoliation cause of action. Alternatively, Pennzoil argues that the trial court properly treated Brown's claim as a request for a spoliation presumption.

Because Brown added his spoliation claim for the first time in his fourth amended petition, Pennzoil could not address that claim in its motion for summary judgment, which had already been filed in the trial court. Pennzoil did not file an amended motion for summary judgment that could have addressed the spoliation claim. Because Pennzoil did not move for summary judgment on Brown's spoliation arguments, it is barred from raising those arguments for the first time on appeal. *See Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex.1993) ("[A] summary judgment cannot be affirmed on grounds not expressly set out in the motion. . . .").

Additionally, in rendering summary judgment on this claim, the trial court erred by granting more relief than Pennzoil requested in its motion for summary judgment. *See Muston v. Nueces County Sheriff's Dep't*, 122 S.W.3d 469, 471 (Tex. App.-Corpus Christi 2003, no pet.) ("A summary judgment that purports to dispose of causes of action not addressed in the summary judgment motion is erroneous.").

We sustain Brown's second issue on appeal.

## Conclusion

We affirm that portion of the judgment that granted Pennzoil's no-evidence motion for summary judgment on Brown's intentional act claim. We reverse that portion of the judgment that granted Pennzoil's no-evidence motion for summary judgment on the spoliation of evidence claim and remand the cause for further proceedings in accordance with this opinion.