799 So.2d 1215 (2001)
Anthony J. MOUTON and Joyce Mouton
v.
BLUE MARLIN SPECIALTY TOOLS, INC., et al.
No. 01-648.
Court of Appeal of Louisiana, Third Circuit.
October 31, 2001.
Rehearing Denied December 26, 2001.
*1216 Aaron W. Guidry, Lafayette, LA, Counsel for Plaintiffs/Appellants Anthony J. Mouton and Joyce Mouton.
Bruce D. Beach, Allen & Gooch, Lafayette, LA, Counsel for Defendant/Appellee Liberty Mutual Insurance Company.
Pierre M. Legrand, Ungarino & Eckert, L.L.C., Metairie, LA, Counsel for Defendant/Appellee Esgard, Inc.
Donald C. Brown, Woodley, Williams, Boudreau, Norman, Brown & Doyle, L.L.C., Lake Charles, LA, Counsel for Defendants/Appellees *1217 Blue Marlin Specialty Tools, Inc., et al.
Court composed of SYLVIA R. COOKS, OSWALD A. DECUIR and ELIZABETH A. PICKETT, Judges.
COOKS, Judge.
This appeal arises from the trial court's granting of summary judgment in favor of Blue Marlin Specialty Tools and Liberty Mutual Insurance Company. The trial court found Anthony Mouton was limited to the exclusive remedies of the Louisiana Workers' Compensation Act, and as Mouton's employer, Blue Marlin was entitled to the exclusivity protection of the Act. The trial court also found the actions of Blue Marlin did not rise to the level of an intentional act as the plaintiffs contended. For the following reasons, we affirm the judgment below.

FACTS
Anthony Mouton was hired to perform work at the Blue Marlin pipe yard through Minute Man, a temporary staffing service. After a few days, Mouton went to his supervisor at Blue Marlin, and asked if Blue Marlin would hire him permanently. Blue Marlin agreed. When Mouton received a paycheck for his work at Blue Marlin, it was paid by a company called Select Staffing. Select Staffing handled the payroll functions for Blue Marlin.
Mouton's duties with Blue Marlin included the receiving, cleaning and reconditioning of used oilfield pipe and rental equipment. According to Mouton, in February of 1992, a piece of metal from a grinding machine became lodged in his eye. Mouton was treated by Dr. Thomas Callender. In addition to the symptoms associated with the metal in his eye, Mouton complained of severe headaches, dizziness, breathing difficulty, chest pains and other problems. On March 2, 1992, Dr. Callender wrote a note for Mouton to give to his supervisors, advising that he "avoid Varsol and other solvent exposures to skin or to strong fumes." Mouton gave this note to his supervisor, but continued to perform the same duties.
Eventually, Mouton failed to show for work and was terminated by Blue Marlin. Anthony and Joyce Mouton filed a petition alleging negligence and/or intentional acts on the part of Blue Marlin in failing to provide protective clothing, respirators, equipment, proper training, medical surveillance, and "gross and willful violations" of workplace health and safety regulations, both state and federal. Liberty Mutual Insurance Company, as the liability insurer of Blue Marlin, filed a motion for summary judgment, seeking a dismissal pursuant to the exclusivity provisions of the Workers' Compensation Act. Blue Marlin also filed its own motion for summary judgment.
Following arguments, the trial court granted the motions of both Liberty and Blue Marlin, specifically finding Blue Marlin was Mouton's employer for purposes of the Workers' Compensation Act. The court also found plaintiffs failed to present evidence sufficient to raise a fact question relative to the issue of an intentional tort. Plaintiffs have appealed the trial court's judgment asserting the following assignments of error:
1. The trial court erred in finding there exists no genuine issues of material fact relative to the issue of whether Blue Marlin was Anthony Mouton's employer.
2. The trial court erred in finding there exists no genuine issues of material fact as to whether Anthony Mouton's injuries were "substantially certain to occur" as a result of the actions and/or inactions on the part of Blue Marlin and/or Select Staffing.

*1218 ANALYSIS
On appeal, summary judgments are reviewed de novo. Magnon v. Collins, 98-2822 (La.7/7/99); 739 So.2d 191. Thus, the appellate court asks the same questions the trial court asks in determining whether summary judgment is appropriate. Id. This inquiry seeks to determine whether any genuine issues of material fact exist and whether the movant is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B) and (C). Summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of every action. La. Code Civ.P. art. 966(A)(2).
Pursuant to La.R.S. 23:1032(A)(1)(a), an employee or his dependent who is entitled to workers' compensation benefits is limited to the rights and remedies under the Workers' Compensation Act to the exclusion of all other rights, remedies, and claims for damages, except for intentional acts and unless otherwise provided by statute.
Anthony Mouton argues the provisions contained in the leasing agreement establish that Select Staffing was, in fact, his employer, or at the very least, places Blue Marlin's alleged status as "employer" in genuine dispute. Blue Marlin notes when plaintiffs filed their petition, they alleged Blue Marlin was Anthony Mouton's employer. This allegation was repeated in the First and Second Supplemental and Amending petitions. It was not until shortly before the hearing on the motions for summary judgment that plaintiffs argued Select Staffing was the actual employer of Anthony Mouton.
The record established Select Staffing is an employee payroll service. It paid all of Blue Marlin's employees' wages including gross pay, bonuses, allowances and deductions.
Even if Anthony Mouton were not the direct employee of Blue Marlin, he would be a "borrowed employee." This factual dispute is immaterial in the tort action and does not preclude summary judgment. Under the jurisprudence, a borrowing employer is solidarily liable with a general employer for workers' compensation benefits, and the borrowed employee is barred from bringing a tort action against the borrowing employer. Pradia v. Southern Personnel of La., Inc., 00-0365 (La.App. 3 Cir. 10/11/00); 776 So.2d 474, writ denied, 00-3018 (La.1/5/01); 778 So.2d 599. Therefore, plaintiffs are barred in this case from bringing a tort action against Blue Marlin in the absence of proof of an intentional act on Blue Marlin's part.
In Guillory v. Olin Corp., 99-567, pp. 4-5 (La.App. 3 Cir. 10/13/99); 745 So.2d 713, 715-16, writ denied, 99-3600 (La.2/18/00); 754 So.2d 968, this court reviewed the employee's burden of proof with regard to the intentional act exception to La.R.S. 23:1032:
Plaintiff's cause of action is based on the alleged commission of an "intentional act" as defined by La.R.S. 23:1032(B). La.R.S. 23:1032(B) provides an intentional act exception which does not include "deliberate" acts or "gross negligence." Reeves [v. Structural Preservation Systems, 98-1795 (La.3/12/99); 731 So.2d 208,] 208. The statute as enacted limits the availability of tort recovery only to employees whose injuries are caused by genuine intentional acts, anything less than intentional, whether it be gross negligence or violation of a safety rule, remains in workers' compensation. The Plaintiff must prove employer's intent which is defined as: (1) consciously desiring the physical results of the particular conduct, or (2) knowledge that the *1219 physical results were "substantially certain" to follow such conduct. Bazley v. Tortorich, 397 So.2d 475 (La.1981).
. . . .
Although believing that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers' compensation. Reeves, 731 So.2d at 212. "Substantially certain to follow" requires more than a reasonable probability that an injury will occur and "certain" has been defined to mean "inevitable" or "incapable of failing." Reeves, 731 So.2d at 213, quoting Jasmin v. HNV Cent. Riverfront Corp., 94-1497 (La.App. 4 Cir. 8/30/94); 642 So.2d 311, 312, writ denied, 94-2445 (La.12/9/94); 647 So.2d 1110.
Our courts have held that allegations of failure to provide a safe place to work, deficiently designed machinery and disregard of OSHA safety provisions, failure to correct unsafe working conditions, and failure to provide specifically requested safety equipment are not sufficient to invoke the intentional act exception of Revised Statute 23:1032(B) absent proof (or in the case of summary judgment, disputed issues of fact) of either defendant's desire to harm plaintiff or defendant's knowledge that his conduct would nearly inevitably cause injury to plaintiff.

Ponthier v. Brown's Manufacturing, Inc., 95-1606 (La.App. 3 Cir.1996); 671 So.2d 1253.
Anthony Mouton's own testimony does not support the conclusion that Blue Marlin consciously desired an injury to occur or was "substantially certain" its conduct would cause injury to Mouton:
Q. And I think you told Counsel for Edgard that you never really complained about health problems to anyone at Blue Marlin; right?
A. Right.
Q. Okay. Now, because you never told anyone at Blue Marlin, you know, about any particular health problems, I assume there was never an occasion where you related some kind of health problem or complaint to someone at Blue Marlin, and they told you, "Forget about it, just go back to work," that never happened, did it?
A. No.
Q. Okay. So there was never a situation where you had a superior at Blue Marlin that you made aware of some kind of health complaint, and they told you to go back to work even after you had made that complaint; that never happened?
A. That never happened.
Q. Okay. And is it fair to say that the extent that you had health complaints of the nature you've previously described like headaches, difficulty sleeping, maybememory absences or whatever that really, you communicated those to Doctor Calendar [sic] or your health care providers rather than to your employer directly?
A. Yes sir.
Q. Okay. Now, we've talked a little bit about your problems. Let me ask you some questions about other employees. During the time that you worked at Blue Marlin, did you ever witness a situation where an employee or worker got injured or sick and was told to go back to work even though, you know
A. Not that I
Q. Not that you saw?
A. Not that I saw.
Q. Okay. So you never saw a situation where an employee's health or well being was knowingly disregarded at Blue Marlin?

*1220 A. Not that I can say, no.
Q. Okay. And I'm not talking about situations, for example, where maybe somebody was doing something that was risky, or we know they were doing risky with the benefit of hindsight. I'm talking about situations that you were able to directly see and personally observe did you ever see [your supervisor] or any of the foreman at Blue Marlin deliberately disregard the health and safety of employees when they knew full well that someone was injured or hurt in some way?
A. Not that II can't
At worst, the record before the trial judge demonstrated exposure of workers to hazardous substances in violation of safety regulations. The jurisprudence has made it clear this alone is not sufficient to raise a fact question on the issue of an intentional tort. The Supreme Court in Reeves, 731 So.2d 208, held even if an employer believed an employee "probably will" be injured if a workplace practice continues, still this is not sufficient to rise to the level of an intentional act. Recently, this court in Labbe v. Chemical Waste Management, Inc., 00-1772 (La.App. 3 Cir. 5/2/01); 786 So.2d 868, found the failure to provide employees with safety equipment, while working around known hazardous substances, was not enough to raise an issue of fact to preclude summary judgment. Thus, the trial court did not err in granting summary judgment on this issue.

DECREE
For the foregoing reasons, the judgment of the lower court is affirmed. Costs of this appeal are assessed against plaintiffs-appellants.
AFFIRMED.