Opinion issued August 18, 2005.



     









In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00137-CV




THOMAS RICHARD BROWN, Appellant

V.

PENNZOIL-QUAKER STATE COMPANY, Appellee




On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause No. 2001-01176A




O P I N I O N

          Appellant, Thomas Richard Brown, appeals from the trial court’s judgment
rendered upon appellee Pennzoil-Quaker State Company’s (Pennzoil’s) no-evidence
motion for summary judgment. In two issues on appeal, Brown asserts that the trial
court erred in rendering summary judgment on his claims for (1) an “intentional act”
and (2) spoliation of evidence. We affirm the judgment in part, reverse it in part, and
remand the cause.
Background
          On January 18, 2000, an explosion occurred at Pennzoil’s refinery in
Shreveport, Louisiana. Four people were injured, including Brown, a Pennzoil
employee working at the refinery at the time of the accident. Brown sustained burns
to over 85% of his body. Upon investigation of the accident, the Occupational Safety
and Health Administration (OSHA) determined that the O2B heat exchanger had
ruptured, causing a fire and explosion of hydrocarbons. Although the unfortunate
events occurred in Louisiana, Brown filed suit against a variety of defendants in
Harris County, Texas. Pennzoil later intervened in the suit to recover damages for the
partial destruction of its refinery. After settling with some of the defendants, Brown
asserted claims against Pennzoil. 
          In his fourth amended petition, Brown asserted causes of action against
Pennzoil based on the following allegations: (1) Pennzoil committed intentional torts
by knowing that Brown’s injuries were substantially certain to follow from its
conduct and (2) Pennzoil intentionally destroyed evidence. Brown specified that
Pennzoil failed (1) to test the heat exchanger for chloride levels; (2) to properly
maintain the shell of the heat exchanger; (3) to test for shell thickness of the heat
exchanger; (4) to discontinue operations without the water-wash system being in
service; (5) to stop operations when a nearby valve failed and the water-wash system
was down; (6) to remove the heat exchanger from service; and (7) to warn of the
danger of the explosion. 
          On December 23, 2002, Pennzoil filed a no-evidence motion for summary
judgment. It asserted that Brown had no evidence that an intentional act had occurred
and that there was no evidence that Pennzoil was substantially certain Brown would
be injured as a result of its conduct. In opposition to the motion, Brown submitted
an affidavit, depositions, and OSHA materials to raise a fact issue. On April 30,
2003, the trial court, without stating its reasons, granted Pennzoil’s motion for
summary judgment and dismissed all of Brown’s claims against Pennzoil. Brown
filed a motion for reconsideration on June 2, 2003. Pennzoil responded, stating that
no new evidence was presented. On September 19, 2003, Brown filed a supplemental
motion for reconsideration. The trial court denied Brown’s motion for
reconsideration on September 26, 2003. This appeal followed.
Standard of Review
          A no-evidence motion for summary judgment is essentially a directed verdict
granted before trial, to which we apply a legal sufficiency standard of review. King
Ranch, Inc. v. Chapman, 118 S.W.3d 742, 750–51 (Tex. 2003); Jackson v. Fiesta
Mart, Inc., 979 S.W.2d 68, 70 (Tex. App.—Austin 1998, no pet.). In general, a party
seeking a no-evidence summary judgment must assert that no evidence exists as to
one or more of the essential elements of the non-movant’s claims on which it would
have the burden of proof at trial. Holmstrom v. Lee, 26 S.W.3d 526, 530 (Tex.
App.—Austin 2000, no pet.). Once the movant specifies the elements on which there
is no evidence, the burden shifts to the non-movant to raise a fact issue on the
challenged elements. Tex. R. Civ. P. 166a(i). A no-evidence summary judgment will
be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the
court is barred by rules of law or of evidence from giving weight to the only evidence
offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more
than a scintilla, or (4) the evidence conclusively establishes the opposite of a vital
fact. King Ranch, 118 S.W.3d at 751. We view the evidence in the light most
favorable to the non-movant, disregarding all contrary evidence and inferences. Id.
          A no-evidence summary judgment is improperly granted if the non-movant
brings forth more than a scintilla of probative evidence to raise a genuine issue of
material fact. Id. When the evidence supporting a finding rises to a level that would
enable reasonable, fair-minded persons to differ in their conclusions, more than a
scintilla of evidence exists. Merrell Dow Pharmaceuticals, Inc. v. Havner, 953
S.W.2d 706, 711 (Tex. 1997). A defendant who moves for summary judgment need
only negate one element of the plaintiff’s cause of action. See Gibbs v. Gen. Motors
Corp., 450 S.W.2d 827, 828 (Tex. 1970).
Evidence
          In his first issue, Brown asserts that the trial court erred in rendering a no-evidence summary judgment in Pennzoil’s favor on his claim that he was injured by
Pennzoil’s “intentional act.” We disagree.
Louisiana Law
          The parties agree that Louisiana law applies. Thus, we apply the substantive
legal principles of Louisiana law. Robin v. Entergy Gulf States, Inc., 91 S.W.3d 883,
885 (Tex. App.—Beaumont 2002, pet. denied). Nevertheless, we apply the Texas
standards of appellate review. Id.; see also Tex. Civ. Prac. & Rem. Code Ann. §
71.031(b) (Vernon Supp. 2004-2005).
          Since 1914, Louisiana has had worker’s compensation laws, but employees
were formerly able to pursue additional remedies against their employers. See Reeves
v. Structural Pres. Sys., 98-1795 (La. 3/12/99), 731 So. 2d 208, 209. In 1976,
however, the Louisiana Legislature amended the Workers’ Compensation Act (“Act”)
to provide that workers’ compensation shall be the exclusive remedy not only against
the employer, but also against any principal, officer, director, stockholder, partner,
or employee of the employer or principal who was engaged at the time of the injury
in the normal course and scope of his employment. See La. Rev. Stat. Ann. §
23:1032(A)(1)(a) (West 1998); see also Reeves, 731 So. 2d at 209–10. The Act
provides:
Except for intentional acts provided for in Subsection B, the
rights and remedies herein granted to an employee or his
dependent on account of an injury, or compensable sickness or
disease for which he is entitled to compensation under this
Chapter, shall be exclusive of all other rights, remedies, and
claims for damages, including but not limited to punitive or
exemplary damages, unless such rights, remedies, and damages
are created by a statute, whether now existing or created in the
future, expressly establishing same as available to such employee,
his personal representative, dependents, or relations, as against
his employer, or any principal or any officer, director,
stockholder, partner, or employee of such employer or principal,
for said injury, or compensable sickness or disease.

La. Rev. Stat. Ann. § 23:1032(A)(1)(a). The legislature also provided an exception,
namely that the employee is not limited to workers’ compensation and may pursue
any other remedy when his compensable injury resulted from an intentional act. See
id. § 23:1032(B) (West 1998); Reeves, 731 So. 2d at 210. 
          In this suit, Brown alleged that Pennzoil committed an intentional act, invoking
the exception to the exclusive remedy provision provided for in section 1032(B) of
the Act. This intentional act exception states, 
Nothing in this Chapter shall affect the liability of the employer,
or any officer, director, stockholder, partner, or employee of such
employer or principal to a fine or penalty under any other statute
or the liability, civil or criminal, resulting from an intentional act.
 
La. Rev. Stat. Ann. § 23:1032(B) (emphasis added).
          Under Louisiana law, a person acts with “intent” if the person either
          (1)     consciously desires the physical result of his act, whatever
the likelihood of that result happening from his conduct; or 
 
          (2)     knows that the result is substantially certain to follow from
his conduct, whatever his desire may be as to that result. 

Reeves, 731 So. 2d at 211.



          Louisiana courts narrowly construe the intentional act exception. See id. The
“substantial certainty” element requires more than a reasonable probability that an
injury will occur; rather “certain” has been defined to mean “inevitable” or “incapable
of failing.” Id. at 213. An employer’s mere knowledge that a machine is dangerous
and that its use creates a high probability that someone will eventually be injured is
not sufficient to meet the substantial certainty requirement. Id. Furthermore, mere
knowledge and appreciation of a risk does not constitute intent; nor does reckless or
wanton conduct by an employer constitute intentional wrongdoing. Id. Gross
negligence does not meet the intentional act requirement. Id. at 211–12. “Even if the
alleged conduct goes beyond aggravated negligence, and includes such elements as
knowingly permitting a hazardous work condition to exist, knowingly ordering
claimant to perform an extremely dangerous job, or willfully failing to furnish a safe
place to work, this still falls short of the kind of actual intention to injure that robs the
injury of accidental character.” Id. at 210 (quoting Larson, 2A Workmen’s
Compensation Law, § 68.13 (1989)).


 
Contentions of the Parties
          In its motion for summary judgment, Pennzoil asserted there was no evidence
to show that it acted with knowledge to a virtual certainty that Brown would be
harmed at its facility. Essentially, Pennzoil argued that Brown presented no evidence
that it knew an explosion would cause injury that was substantially certain to follow
from its conduct. 
          Brown presented the following evidence to raise a material fact issue in
response to Pennzoil’s motion for summary judgment: (1) OSHA documents showing
violations of OSHA safety regulations at Pennzoil’s refinery; (2) the affidavit of
Charles Hellier; and (3) the deposition testimony of Richard Nichols, Cliff Bigelow,
Frank Johnson, Ed Juno, and William Taylor. We now review Brown’s evidence to
determine whether he raised a genuine issue of material fact as to Pennzoil’s
intentional act.
 
          OSHA Evidence
          Brown points out that, after the explosion, OSHA fined Pennzoil $202,500 for
three willful and three serious violations at its refinery. The three serious violations
included (1) deficiencies with Pennzoil’s Process Safety Management Program; (2)
a violation that addressed mechanical integrity; and (3) Pennzoil’s “failure to properly
inspect pressure vessels after corrosion problems were identified.” One of the willful
violations included Pennzoil’s failure to identify and to address all known hazards
and potential hazards related to corrosion in pressure vessels.
          Affidavit of Charles Hellier
          Genesis Crude Oil, L.P.’s


 expert, Charles Hellier, stated in his affidavit that
          [Pennzoil’s] inspection program failed to comply with the American Petroleum Institute’s recommendations and did not
comport with industry standards. Specifically, Pennzoil’s testing
program failed to focus on areas in which corrosion problems
and/or failures occurred in the past and inspections failed to take
a representative number of samples which would allow for an
accurate historical comparison. 

          Deposition Testimony
                    Richard Nichols
          Richard P. Nichols, a senior engineer for Pennzoil, was responsible for
inspecting and monitoring corrosion. He testified that corrosion could occur in any
exchanger at any time. Nichols agreed that corrosion would occur in a heat
exchanger as a result of the laws of nature and that corrosion occurs because of
chemicals in the process and the metals, air, and moisture. He admitted that before
January 18, 2000, he knew that corrosion would occur in the heat exchangers. He
also admitted that it was important to evaluate the level of corrosion to maintain the
shell’s integrity. He stated that testing the integrity of the metal was performed to
avoid a breach and that, in the absence of testing, a catastrophic event could occur. 
          Nichols testified that organic chlorides in the crude were the primary cause of
the explosion that injured Brown. He also testified that the water-wash system


 was
important and that a failure to use it could potentially lead to corrosion. He stated
that the water-wash system was not operating in January, 2000. 
                    Cliff Bigelow
          Cliff Bigelow, an engineer for Material Analysis, Inc., testified that “certainly
at some time if corrosion advances to the point where it can no longer contain the
pressure that it’s designed for, then [a breach] would be the ultimate result.” In that
case, the breach would be inevitable. Bigelow opined that the cause of the heat
exchanger’s failure was metal wastage due to corrosion caused by hydrochloric acid.
 
                    Frank Johnson
          Frank Johnson, a mechanical engineer for Pennzoil, testified that Pennzoil
knew in 1971, when it installed the heat exchanger, that corrosion would occur and
was inevitable. He testified that Pennzoil knew the vessel would continue to thin
from corrosion, but that periodic testing would enable Pennzoil to predict the
thinning, so that, when Pennzoil retired the heat exchanger, the heat exchanger would
still have substantial wall thickness. He stated that, “based on the ‘98 data . . . an
event like that should not have occurred at all.” 
                    Ed Juno
          Ed Juno, the Director of Optimization at Pennzoil’s Shreveport refinery, 
testified that, sometime after 1999, the refinery started to purchase high sulfur crude
oil to reduce the “feedstock cost of the plant.” Because ammonium salts could build
up in the heat exchanger, the refinery had a policy of running the water-wash system
continuously to wash the salts off. Juno was aware that the water-wash system had
had problems in 1998 and that Pennzoil had modified the system to use sour water. 
Juno testified that, in the absence of a water wash, ammonium salts and ammonium
chlorides could lead to under-deposit corrosion in a heat exchanger, but that under-deposit corrosion was a very slow corrosion mechanism. Juno agreed that the organic
chlorides level was higher than he wanted.
 
                    William Taylor
          William Taylor, a senior engineering inspector for Pennzoil, was responsible
for inspecting the Naphtha Unifiner and heat exchangers. He testified that Pennzoil
had a policy of performing full turnaround inspections every three years on its heat
exchangers. In 1998, Pennzoil performed an on-stream inspection instead of a full
turnaround inspection


 because the industry had changed to allow on-stream
inspections every five years. One of Taylor’s colleague’s, Jimmy Dupuy,
recommended a full turnaround inspection in 1998, but Pennzoil did not perform this
inspection because Dupuy did not give enough reasons why it should be done. In an
incident interview statement, Taylor stated that he was not notified that crude with a
higher chloride or sulfur count was entering the facility for processing. 
Analysis
                    Intentional Act
          In his opposition to the summary judgment motion, Brown argued that the
evidence showed that Pennzoil had actual knowledge of the corrosion, the
inevitability of a failure or explosion, and the extreme danger posed by the inevitable
failure or explosion. He further argued that the evidence showed Pennzoil’s financial
motivation for its disregard of the safety of its employees. On appeal, Brown argues
that Pennzoil knew that the results of its conduct were substantially certain to follow
from its conduct and that Pennzoil consciously subjected him to a hazardous work
environment in which injury was inevitable. 
          Brown’s evidence to support his cause of action for an intentional tort can
essentially be grouped under five allegations: (1) Pennzoil violated its own safety
policies and procedures; (2) Pennzoil failed to allow its employees to participate in
the Safety Management program; (3) Pennzoil failed to adequately inspect the heat
exchangers and failed to inspect the crude that entered its refinery; (4) Pennzoil failed
to shut down the heat exchanger when the water-wash system was not operating; and
(5) Pennzoil knew that corrosion would occur in the heat exchanger.
          Brown’s summary judgment evidence thus goes to establish that Pennzoil
violated its own safety standards and procedures and that it knowingly permitted a
hazardous condition to exist. However, the Louisiana Supreme Court noted in Reeves
that the courts of appeals have almost universally held that employers are not liable
under the intentional act exception for violations of safety standards or for failing to
provide safety equipment. Id. at 211–12. “Violation of a statute alone is not per se
such an intentional act as will result in the employer’s tort liability if injuries are
sustained by an employee because of the violation.” Mott v. River Parish Maint.,
Inc., 432 So. 2d 827, 832 (La. 1983). Thus, such evidence is insufficient to raise a
material fact issue with respect to the intentional act exception to Louisiana’s
worker’s compensation laws. See Reeves, 731 So. 2d at 211–12; Mott, 432 So. 2d at
832. 
          Brown acknowledges that the failure to provide a safe place to work, the
disregard of OSHA safety provisions, and the failure to correct unsafe working
conditions are alone not sufficient to invoke the intentional act exception of section
1032(B), but he argues that these failures are sufficient in combination with summary
judgment proof of Pennzoil’s knowledge that its conduct would nearly inevitably
cause injury. Brown cites James v. Red Simpson, Inc., 2003-0304 (La. App. 3 Cir.
10/01/03), 856 So. 2d 115 and Mouton v. Blue Marlin Specialty Tools, Inc., 2001-648
(La. App. 3 Cir. 10/31/01), 799 So. 2d 1215. Although both cases restate the first half
of Brown’s proposition, neither case supports the second half. In both cases, the trial
court granted summary judgment in favor of the employer. See James, 856 So. 2d at
116; Mouton, 799 So. 2d at 1217. The court of appeals affirmed the grant of
summary judgment in both cases. See James, 856 So. 2d at 118; Mouton, 799 So. 2d
at 1220. In neither case did the court of appeals conclude that a combination of
lapses, together with a defendant’s knowledge that a bad result would occur unless
safety conditions were corrected, was sufficient to meet the intentional act exception. 
          Brown, however, contends that Louisiana courts have found an intentional act
under similar circumstances. Although he cites numerous cases, he relies primarily
upon three. We find these cases distinguishable on their facts.
          In Clark v. Division Seven, Inc., a foreman ordered two roofers to work on a
wet roof. 99-3079 (La. App. 4 Cir. 12/20/00), 776 So. 2d 1262, 1263, writ denied,
2001-0183 (La. 3/16/01), 787 So. 2d 318. At the time the roofers were working, light
rain and occasional heavy rain would force them to stop. Id. Both workers told the
foreman that it was too dangerous to resume work because of the weather conditions. 
Id. The foreman responded that they could either continue working or be fired. Id. 
One of the workers slipped on the roof and narrowly avoided falling off the three-story church on which they were working. The employee who slipped objected again
to working, to which the foreman repeated that they needed to continue working or
they would be fired. Id. at 1263–64. Although the other employee chose to be fired
and left the worksite, the plaintiff stayed. Id. A short time later, the plaintiff slipped
on the wet roof, fell to the ground, and was severely injured. Id. at 1264. The
plaintiff sued, and the trial court rendered judgment in his favor. Id. The court of
appeals affirmed, holding that when the foreman ordered the plaintiff to return to the
wet, slippery roof shortly after the other roofer had slipped, the “circumstances
indicated that injury to the plaintiff was inevitable or substantially certain to occur.” 
Id. 
          Brown relies on Clark to show that Pennzoil had notice of the relevant
hazard—without identifying the relevant hazard. To support the assertion that
Pennzoil had notice, Brown refers us to OSHA reports stating that Pennzoil was
aware of corrosion in the heat exchanger. He further cites to evidence of previous
corrosion that was reported in 1982 and a prior accident that occurred 19 years ago
at Pennzoil’s refinery. Based on the OSHA reports showing previous instances of
corrosion at the Pennzoil refinery, Brown argues that we should reverse the summary
judgment because Pennzoil had more notice than the employer in Clark. We
disagree.
          Clark is distinguishable from the present facts for at least two reasons. First,
the Clark facts occurred over a very short time period and under unchanged
conditions, whereas here the long lapse of time—19 years—minimizes any notice
from the prior accident. Second, in Clark, an event occurred that put the employer
on notice of the specific hazard, i.e., one employee had already slipped and nearly
fallen off the wet three-story roof. Here, Brown submitted no evidence, or no more
than a scintilla of evidence, to show that Pennzoil was substantially certain that an
explosion and subsequent injuries to its employees would occur as a result of its
conduct. To the extent that Brown argues that Pennzoil had notice of corrosion in the
heat exchanger and that the knowledge of corrosion made Pennzoil aware that an
explosion would occur, we conclude that knowledge of corrosion in the heat
exchanger is of no relevance because corrosion in a heat exchanger is a natural
process; thus, mere knowledge of corrosion, without evidence that Pennzoil had
notice that the corrosion had reached the point at which an explosion in the near
future was substantially certain to occur, is no evidence that an explosion was about
to occur. 
          Brown also cites Wainwright v. Moreno’s, Inc. 602 So. 2d 734 (La. App. 3 Cir.
1992). In Wainwright, the plaintiff was digging a 10-foot-deep ditch when it caved
in. Id. at 736. The plaintiff sued his employer and the foreman who had ordered him
to dig the ditch. Id. The trial court found that the plaintiff’s employer and the
foreman knew that the injuries to the plaintiff were substantially certain to result from
their actions. Id. at 738. The appeals court affirmed, noting there was testimony that
a cave-in had occurred the day before the accident. Id. at 739. Because of this cave-in, the employer had held a safety meeting at which the employees were told not to
enter a ditch unless they could see out of it. Id. at 739. Additional evidence indicated
that a cave-in was inevitable, including testimony from an engineer who stated that
he had told a foreman that the soil was sloughing off the sides of the ditch and that
no one should be allowed in the ditch without protection. Id. The engineer also told
a superintendent that the dirt was unstable and that “no one should be allowed in the
ditch until they protected the ditch against a cave-in.” Id. As in Clark, the evidence
in Wainwright shows that the employer was aware of an accident that had occurred
very recently—the day before—under the same conditions and that the employer
ignored evidence of instability in the soil which indicated that another accident was
substantially certain to occur and to cause injury to persons in the ditch. 
          Finally, Brown relies on Bailey v. United Gas Pipe Line Co. 27655 (La. App.
2 Cir. 12/6/95), 665 So. 2d 664, writ denied, 96-0058 (La. 2/28/96), 668 So. 2d 372. 
In Bailey, the employee was killed while making repairs to a pipe coupling. Id. at
666. The employee’s wife filed suit against his employer, contending that his
employer had committed an intentional act. Id. The employer filed a motion for
summary judgment, disputing that the employee’s death was caused by an intentional
act. Id. In response, the plaintiff submitted affidavits from two experts who both
concluded that the course of conduct, combined with the weather conditions, made
it substantially certain that the pipeline would fail, resulting in damages and injuries. 
Id. The trial court granted the summary judgment, finding that the experts’ affidavits
were inadmissible. Id. at 666–67. The appellate court held that, to prevail on
summary judgment, a party must show that there is no genuine issue of material fact
as to whether the employer intended to cause the death of the employee. Id. at 667.
The appellate court then held that the record was replete with evidence, including the
experts’ affidavits, to show a genuine issue of fact. Id. at 667–68.
          Bailey is distinguishable from the present facts because Bailey’s expert
witnesses testified that the employer’s “course of conduct, combined with the weather
conditions, made it substantially certain that the pipeline would fail, resulting in
damages and injuries.” Id. at 666. Here, Brown did not present more than a scintilla
of evidence that Pennzoil knew that conditions at the refinery were such that an
explosion, causing injuries, was substantially certain to occur from its conduct. There
was no evidence that Pennzoil was on notice that the heat exchanger was about to
explode or that, knowing such danger, an employee of Pennzoil ordered Brown to
work where he would be injured if the substantially certain explosion occurred. The
closest that Brown came to surmounting its hurdle was through Nichols’s testimony
that, in the absence of proper testing to avoid a breach, “you may have a catastrophic
event.” This testimony does not meet the requirement of substantial certainty. See
Reeves, 731 So. 2d at 212 (stating, “Believing that someone may, or even probably
will, eventually get hurt if a workplace practice is continued does not rise to the level
of an intentional act, but instead falls within the range of negligent acts that are
covered by worker’s compensation”); see also Guillory v. Domtar Indus. Inc., 95 F.3d
1320, 1327–28 (5th Cir. 1996) (holding that no genuine issue of fact was raised as to
employer’s knowledge that employee’s injury was substantially certain to follow from
employer’s actions); Landry v. Uniroyal Chem. Co., 94-1274 (La. App. 1 Cir. 3/3/95),
653 So. 2d 1199, 1203–04, writ denied, 95-1381 (La. 9/15/95), 660 So. 2d 461; cf.
Mitchell v. Exxon Corp., 907 F. Supp. 198, 200 (M.D. La. 1995) (“[A]bsent the most
egregious of circumstances . . . no plant owner will intentionally destroy or badly
damage its own plant facility. No degree of carelessness, negligence, or even gross
negligence can, or ever will, amount to ‘an intentional act’ so long as those words
remain a part of the English language.”). The “substantial certainty” element requires
more than a reasonable probability that an injury will occur. Reeves, 731 So. 2d at
213. 
          After reviewing all of the evidence and arguments, we hold that Brown did not
produce more than a scintilla of evidence of an intentional act. Accordingly, we
conclude that the trial court properly granted Pennzoil’s no-evidence motion for
summary judgment on Brown’s intentional act claim.
          We overrule Brown’s first issue on appeal.
          Spoliation of Evidence
          In his second issue on appeal, Brown argues that the trial court improperly
granted summary judgment on his spoliation of evidence claim because Pennzoil did
not move for summary judgment on this claim. 
          We cannot uphold a summary judgment based on arguments that were not
presented to the trial court by written motion. See Tex. R. Civ. P. 166a(c);
McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 341 (Tex. 1993) (“A
motion must stand or fall on the grounds expressly presented in the motion.”). 
          In his fourth amended petition, Brown added a claim for spoliation of
evidence.


 His petition states, 
In addition to the allegations previously made herein, the
evidence will show that [Pennzoil] has destroyed intentionally
evidence upon which it relies to pursue its claim and defend the
claim of [Brown]. [Pennzoil] should not benefit from its
spoliation of the evidence. Accordingly, [Brown] alleges a claim
pursuant to Louisiana State Common Law for spoliation of the
evidence which was a proximate and/or producing cause of
damage and injury to [Brown]. 

          On appeal, Pennzoil asserts that Louisiana has not clearly recognized the tort
of spoliation of evidence under this set of facts. Thus, it contends that the trial court
did not err in dismissing Brown’s spoliation cause of action. Alternatively, Pennzoil
argues that the trial court properly treated Brown’s claim as a request for a spoliation
presumption.
          Because Brown added his spoliation claim for the first time in his fourth
amended petition, Pennzoil could not address that claim in its motion for summary
judgment, which had already been filed in the trial court. Pennzoil did not file an
amended motion for summary judgment that could have addressed the spoliation
claim. Because Pennzoil did not move for summary judgment on Brown’s spoliation
arguments, it is barred from raising those arguments for the first time on appeal. See
Stiles v. Resolution Trust Corp., 867 S.W.2d 24, 26 (Tex. 1993) (“[A] summary
judgment cannot be affirmed on grounds not expressly set out in the motion. . . .”). 
          Additionally, in rendering summary judgment on this claim, the trial court erred
by granting more relief than Pennzoil requested in its motion for summary judgment. 
See Muston v. Nueces County Sheriff’s Dep’t, 122 S.W.3d 469, 471 (Tex.
App.—Corpus Christi 2003, no pet.) (“A summary judgment that purports to dispose
of causes of action not addressed in the summary judgment motion is erroneous.”).
          We sustain Brown’s second issue on appeal.
Conclusion
          We affirm that portion of the judgment that granted Pennzoil’s no-evidence
motion for summary judgment on Brown’s intentional act claim. We reverse that
portion of the judgment that granted Pennzoil’s no-evidence motion for summary
judgment on the spoliation of evidence claim and remand the cause for further
proceedings in accordance with this opinion. 
 
                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Nuchia, Keyes, and Bland.