STATE OF LOUISIANA

COURT OF APPEAL

06-544 consolidated with 06-545


JIMMY VIDRINE, ET AL.

VERSUS

CONSTRUCTORS, INC., ET AL.


**************
APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 203,194
HONORABLE HARRY F. RANDOW, DISTRICT JUDGE


*************
**SYLVIA R. COOKS**
**JUDGE**
*************


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, John
D. Saunders, Marc T. Amy and James T. Genovese, Judges.

Amy, J., concurs in part and dissents in part and assigns reasons.

**AFFIRMED, IN PART;**
**REVERSED, IN PART.**

**Gary A. Bezet**
**Kean Miller Hawthorne**
**D'Armond McCowan & Jarman, LLP**
**Post Office Box 3513**
**Baton Rouge, Louisiana 70821-3513**
**(225) 387-0999**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Constructors, Inc.**

**Joseph Richard Kutch**
**1010 Main Street**
**Pineville, Louisiana 71360**
**(318) 448-6155**
**COUNSEL FOR SECONDARY PLAINTIFF/APPELLANT:**
     **Spencer Bertrand**

**Howard N. Nugent, Jr.**
**Post Office Box 1309**
**Alexandria, Louisiana 71301-1309**
**(318) 445-3696**
**COUNSEL FOR SECONDARY PLAINTIFFS/APPELLANTS:**
    **Jimmy Vidrine**
    **Deborah Vidrine**

**Joseph J. Bailey**
**Provosty, Sadler, Delaunay**
**Fiorenza and Sobel**
**Post Office Drawer 1791**
**Alexandria, Louisiana 71309-1791**
**(318) 445-3631**
**COUNSEL FOR SECONDARY DEFENDANTS/APPELLANTS:**
    **Cleco Midstream Resources, LLC**
    **Cleco Evangeline, Inc.**

**Robert Michael Kallam**
**Jennifer A. Wells**
**Preis, Kraft, & Roy**
**Post Office Drawer 94-C**
**Lafayette, Louisiana 70509**
**(337) 237-6062**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Constructors, Inc.**

**Henry H. LeBas**
**201 Rue Iberville, Suite 600**
**Lafayette, Louisiana 70508**
**(337) 236-5500**
**COUNSEL FOR INTERVENOR/APPELLEE:**
    **Eagle Pacific Insurance Company**

**COOKS, Judge.**

## STATEMENT OF THE CASE

This appeal arises from two asbestos exposure lawsuits.[1] The Plaintiffs, welders, pipe fitters and their helpers, sued their employer, Constructors, Inc.(Constructors), and Cleco, seeking damages for alleged exposure to asbestos during their employment with Constructors in the renovation of a Cleco utility plant. Eagle Pacific Insurance Company (Eagle), Constructor's workers' compensation insurer, filed a petition of intervention on the issue of insurance coverage and duty to defend. Eagle alleged the policy of insurance issued to Constructors', which provided workers' compensation coverage for work-related injuries during the policy period of January 1, 1999 to January 1, 2000, excluded coverage for plaintiffs' claims because, according to Plaintiffs' petition, the last date of alleged exposure to asbestos occurred after the policy period. Eagle also asserted it had no duty to defend Constructors against Plaintiffs' claims.

Constructors filed a motion for summary judgment asserting Plaintiffs' exclusive remedy is in workers' compensation. Cleco filed a motion for summary judgment asserting Constructors was working as an independent contractor and Cleco owed no duty to employees of Constructors. Alternatively, Cleco asserted it was acting as a statutory employer and was immune from liability absent an intentional tort. Eagle filed a motion for summary judgment asserting it provided no workers' compensation coverage under the policy and it had no duty to defend Constructors. The trial court granted Constructors' and Cleco's motion for summary judgment, finding the Plaintiffs' remedy is exclusively limited by the workers' compensation

---

[1] *Jimmy Vidrine, et al. v. Constructors, Inc., et al.,* Civil No. 203,194 (Ninth Judicial District Court, Parish of Rapides) and *Spencer Regan Bertrand, et al. v. Robert Moore, et al.,* Civil No. 207,105 (Ninth Judicial District Court, Parish of Rapides).

act. The trial court also granted Eagle's motion for summary judgment finding it had no duty to provide a defense to Constructors.

The Plaintiffs appeal asserting the summary judgment in favor of Constructors and Cleco was improper because the evidence presented supports a claim of intentional tort. Constructors and Cleco appeal the summary judgment granted in favor of Eagle. For the reasons assigned below, we affirm, in part, and reverse, in part, and remand for further proceedings.

***Intentional Tort***

The Plaintiffs contend the circumstances of the alleged exposure supports a finding that Constructors and Cleco either knew asbestos was present on the work site or knew it was substantially certain that asbestos material would be inhaled and adhere to their clothing during the removal process. Thus, Plaintiffs contend their claim against Constructors and Cleco falls under the intentional tort exception to the workers' compensation statute found in La.R.S. 23:1032(B), which provides, in relevant part:

> Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional tort.

In the Written Reasons for Judgment, the trial court defined this provision as follows:

> In *White v. Monsanto Co.*, 585 So.2d 1205, 1208 (La. 1991), the Supreme Court explained the meaning of "intentional act" under La.R.S. 23:1032(B):
>
> > The meaning of "intent" is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to that result. Thus, intent has reference to the consequences of an act rather than to the act itself. Only

4

where the actor entertained a desire to bring about the consequences that followed or where the actor believed that the result was substantially certain to follow has an act been characterized as intentional.

The term "substantially certain" has been interpreted to mean "nearly inevitable," "virtually sure," and "incapable of failing." It requires more than a reasonable probability, even more than a high probability, that an accident or injury will occur. Mere knowledge and appreciation of risk does not constitute intent, nor does reckless or wanton conduct or gross negligence

The plaintiff has the burden of proving the work-related injury resulted from an intentional act. *Mayer v. Valentine Sugars, Inc.*, 444 So.2d 618 (La. 1984). The jurisprudence has narrowly construed the intentional tort exception to the exclusivity clause in the workers' compensation statute. "'Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, or willfully failing to furnish a safe place to work, this still falls short of the kind of actual intention to injure that robs the injury of accidental character.'" *Reeves v. Structural Preservation Systems*, 98-1795, p. 5 (La. 3/12/99), 731 So.2d 208, 210, *quoting* Larson, 2 *A Workmen's Compensation Law*, § 68.13 (1989). "[A]llegations of failure to provide a safe place to work, deficiently designed machinery and disregard of OSHA safety provisions, failure to correct unsafe working conditions, and failure to provide specifically requested safety equipment are not sufficient to invoke the intentional act exception of Revised Statute 23:1032(B) absent proof (or in the case of summary judgment, disputed issues of fact) of either defendant's desire to harm plaintiff or defendant's knowledge that his conduct would nearly inevitably cause injury to plaintiff. *Labbe v. Chemical Waste Management, Inc.*, 99-1562, p. 5 (La.App. 3 Cir. 3/29/00), 756 So.2d 613, 617; *Reeves,* 731 So.2d 208; *Mouton v. Blue Marlin Specialty Tools*, *Inc.*, 01-648 (La.App. 3 Cir. 10/31/01),

799 So.2d 1215. In *Mouton*, the plaintiff was hired by Blue Marlin to clean and recondition used oilfield pipe and rental equipment. He sought medical treatment when a piece of metal became lodged in his eye. He also complained of severe headaches, dizziness, breathing difficulty, and chest pains. His physician wrote a note to his supervisors advising that he "'avoid Varsol and other solvent exposures to skin or to strong fumes.'" *Mouton*, 799 So. 2d at 1217. The plaintiff gave the note to his employer, but continued to perform the same duties. When he became ill, he sued his employer under the intentional tort exception. This court found the plaintiff failed to carry his burden of proof, stating: "The statute as enacted limits the availability of tort recovery only to employees whose injuries are caused by genuine intentional acts, anything less than intentional, whether it be gross negligence or violation of a safety rule, remains in workers' compensation." *Id.* at 1218.

The Plaintiffs attempted to carry their burden of proof by offering the affidavit of David Odom, a pipe fitter's helper, employed by Constructors on the Cleco utility plant job from December 1999 to March 2000. Mr. Odom stated he and other employees of Constructors were "called upon and worked with or around asbestos or asbestos-containing products during their entire employment with CONSTRUCTORS, INC. so much so that my clothes and my fellow workers' clothes from time to time were laden and covered with the asbestos fibers. . . . " He further stated Constructors' supervisor, Robert Moore, was aware the employees were exposed to asbestos during the job at the Cleco plant, but never "provided any employee of CONSTRUCTORS, INC. at the CLECO Project meaningful access to and/or use of any safety gear or safety equipment that would be indicated or appropriate to working around friable asbestos . . . ." Other affidavits submitted by Plaintiffs contained substantially similar statements.

6

The deposition testimony of the Plaintiff, Jimmy Vidrine, confirms the allegations of the affidavits that Constructors knew asbestos was present on the job-site and would require removal before the renovation work was begun. In fact, the contract between Cleco and Constructors disclosed that asbestos insulation was contained in some of the structures on the plant. However, Constructors insists it took measures to remove the asbestos prior to the renovations. Mr. Vidrine confirms the removal of the asbestos was subcontracted to AmPol and AmPol employees were present on the job site and removed asbestos insulation from the areas requiring renovation. Mr. Vidrine testified the areas within the plant containing asbestos, where Constructors' employee would be working, were identified by Cleco, its engineering firm or by Robert Moore, Constructors' construction supervisor. Mr. Vidrine also testified an OSHA inspection was performed before any work on the line was done. However, Mr. Vidrine testified he believes not all the asbestos was removed from the site and he contends he was exposed to asbestos as a result of work being done in connection with two drums scheduled for removal. He stated there was a two to three week time period when work was being done on the drums. Mr. Vidrine testified the asbestos insulation was disturbed from crew members walking on the drums and a substance, he believes was asbestos, fell from the drums onto the scaffolding. The substance remained there until a Constructors maintenance crew cleaned up the area. The following exchange took place regarding whether the substance was asbestos:

Q: Well, do you know that those drums, that that material was asbestos containing --
A: No, I did not.
Q: You did not know that?
A: No.
Q: You don't know one way or the other?
A: I don't know one way or the other.
Q: What about the line, do you know that for sure, one way or the other?

A: No. Do I know it for sure, no.

7

Although Mr. Vidrine could not positively state the substance was asbestos, it was rumored one of the employees performed a burn test on the insulation and it reacted positive for asbestos. Mr. Vidrine reported his concerns to Robert Moore. He testified as follows:

> Q: And what did you tell them [the employees].
> A: I told them I did not know. I would ask Robert Moore.
> Q: Okay. And did you ask Mr. Moore?
> A: Yes, I did.
> Q: And what did he tell you?
> A: He told me that it was not asbestos and I told him that the employees are concerned about it because they think it is asbestos.

Mr. Vidrine testified Robert Moore called AmPol back to perform further abatement work as per construction change orders. Mr. Vidrine also testified he believes they were exposed to lead-based paints during the course of the job. He stated AmPol was called in to remove lead-based paints on the pipes before welding was done. Mr. Vidrine testified he did not believe Mr. Moore intentionally exposed any employee to asbestos. Mr. Vidrine testified as follows:

> Q: Do you believe that Mr. Moore wanted you or the other employees to be injured in the workplace?
> A: No.
> Q: Do you believe that he thought you would be injured as a result of the work practices going on in the work place?
> A: No.
> Q: Why?
> A: Why do I say I believe he didn't think we would be injured?
> Q: Yes.
> A: Because I don't think he looked for – and that's Jimmy's opinion.
> Q: Okay.
> A: I don't think he looked farsighted enough to consider the long term effect of asbestos.
> Q: So to the extent that you think that he ordered you and others to work in an environment where asbestos was present, do you think that was just a mistake in judgment that he made rather than an intentional decision to hurt you?
> A: Yes, I would say that I don't think anyone ever intentionally ever hurts anyone, in a construction environment.
> Q: You've told us that at the beginning of the project there was some abatement work done by Am-Pol. And you've told us that from time to time afterwards, that Mr. Moore called Am-Pol out to do further

8

abatement work.
A: (Indicating affirmative response.)

Q: Why do you think he decided to abate some of the asbestos material and decided not to abate others? The decision --
A: I think it was a cost issue.
Q: Is that just you speculating?
A: That's me speculating.

Constructors submitted the affidavit of Robert Moore, construction supervisor on the Cleco project. Mr. Moore testified he oversaw the operations and work activities at the utility plant and to his personal knowledge, the Plaintiffs never worked with or around asbestos or asbestos-containing products during the course of the project. He also denied he or other Constructors supervisors refused any employee access to or use of any safety gear/equipment required by regulation or policy. With regard to intent, Mr. Moore testified he never "intended, wanted, expected or consciously desired" for the Plaintiffs to be exposed to asbestos or asbestos-containing product nor was he aware of anyone at Constructors or Cleco who had such an intention. Further, Mr. Moore denied he "had knowledge nor knew of any of the job duties and work activities placed upon any of the Plaintiffs. . . which would result or were substantially certain to result in the contraction of asbestosis, cancer or any other type of occupational disease or illness." Finally, Mr. Moore stated he was not aware and had no knowledge of a Constructors or Cleco personnel who instructed Plaintiffs to "perform job duties or work activities" substantially certain to result in the contraction of these conditions. In addition to Mr. Moore's affidavit, Constructors offered the corroborating affidavit of Robby Toups, its supervisor of pipefitting operations on the Cleco project.

We agree with the trial court that Plaintiffs will be unable to support a claim under the intentional act exception of the workers' compensation statute. It is undisputed asbestos insulation was present in areas of the Cleco structure contracted

9

for renovation. The site was inspected by OSHA, and AmPol was called in to remove the asbestos. Even if Plaintiffs succeed in demonstrating the presence of some remaining asbestos in the work area, which Constructors vehemently denies, the Plaintiffs have not presented any facts to raise a genuine dispute that Constructors intentionally and consciously desired that they be exposed to asbestos or that Constructors knew, that by requiring Plaintiffs to continue on the job, exposure to asbestos was inevitable or substantially certain to occur.

In support of its motion for summary judgment, Cleco offered the affidavits of its own representatives stating that Constructors was responsible for the renovation work and denying any intent on the part of Cleco to expose Plaintiffs to asbestos. The Plaintiffs did not offer any evidence to refute the affidavits of Cleco. Accordingly, we affirm the decision of the trial court granting Constructors and Cleco's motion for summary judgment.

***Insurance Coverage***

Eagle filed a motion for summary judgment asserting it has no duty to indemnify Constructors' and no duty to defend Constructors' against Plaintiffs' claims. Eagle relies on the following Exclusion Provision in the policy:

> Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury must occur during the policy period.[2]

_____

[2] The Exclusion Provision in the Eagle policy embodies the last injurious exposure rule, which was articulated in *Gale v. Gold Bond Bldg. Products*, *Div. of Nat. Gypsum Co.*, 493 So.2d 611 (La. 1986) and is applicable in occupational disease cases involving successive employers. Under the last injurious exposure rule "the last obligor during whose employment the employee was injuriously exposed to a cause of disease is liable for the whole compensation obligation. . . . The last injurious exposure rule is particularly useful for allocating liability in occupational disease cases, which often involve a number of employers and insurers." *Gale*, 493 So.2d at 616. However, this rule does not require a claimant to chose between several potentially liable employers. "Any employer whose employment of a claimant has contributed causally to his disabling occupational disease is solidarily obligated to him fully for workers' compensation. As between successive employers contributing to an employee's disabling occupational disease, the employer during whose employment the employee was last injuriously exposed to the cause of the occupational disease is fully responsible for all workers' compensation due. *Id*. at 612. *Gale*

Eagle asserts the Plaintiffs' petition and discovery responses allege exposure to asbestos beyond the last day of the policy period. The relevant portion of the Plaintiffs' petition provides, as follows:

> On December 12, 1999 on a daily basis through the last date any work was performed by the Plaintiffs as employees of Constructors, Inc., the petitioners herein were exposed to foyable asbestos until after February 2, 2000, resulting in individuals requiring medical care (hereinafter, "the Exposure Allegations").

Eagle cites *Beason v. Red Ball Oxygen Company, Inc.*, 29,894 (La.App. 2 Cir. 10/29/97), 702 So.2d 26 and *Schilling v. Bigelow Liptak Corp.*, 427 So.2d 452 (La.App. 1 Cir. 1982), *writ denied*, 433 So.2d 181 (La.1983). in support of its position. We find these cases distinguishable from the present one. *Beason* involved two insurers of the same employer litigating coverage based on an exclusion provision identical to the one in the present case. However, in *Beason,* there was no dispute that the claimant suffered a work-related injury as a result of repeatedly performing arm, hand and wrist movements and no dispute as to "last injurious exposure" occurred. Wausau provided workers' compensation coverage to Red Ball from April 1, 1991 to April 1, 1993. Thereafter, Red Ball secured workers' compensation insurance from Louisiana Workers' Compensation Corporation (LWCC). When the claimant filed a workers' compensation claim against Red Ball, Wausau filed a third party demand against LWCC for contribution and indemnification based on the coverage dates of the policy. The claimant then amended its petition to add LWCC as a defendant. The appellate court granted summary judgment in favor of Wausau finding no dispute that the "claimant's last injurious exposure to the injury causing conditions occurred on September 14, 1995, his last day of employment. Claimant does not dispute the fact that Wausau's

---

articulated a principle of substantive law which placed the whole of the obligation on the last employer and, therefore, on the workers' compensation insurer of the last employer.

11

insurance policy was not in effect at that time." *Beason*, 702 So.2d at 28. *Schilling* also involved a dispute between two insurers. Coverage was determined following trial on the merits.

However, in this case, the allegations of the petition regarding work-related exposure to asbestos, are very much in dispute. In fact, Constructors alleges the Plaintiffs were not exposed to asbestos at all during their employment. If we accept Eagle's argument, Constructors is placed in the paradoxical position of having to establish liability (exposure to injury causing asbestos) in order to obtain a defense and coverage under the policy. Even Eagle, in brief, acknowledges the dilemma: "In order to support a claim of coverage under the Eagle policy, Constructors would have to show that the exposure occurred and that it last occurred within the Eagle policy period. . . . Constructors has not shown that it occurred **within** the Eagle policy period. Accordingly, Constructors failed to meet its burden of proving that these claims fall within the Eagle policy. This in turn supports Eagle's coverage defense. . . ." We have examined the petition and find it does not allege the last day of Plaintiffs' employment with Constructors. The pleadings do not foreclose a factual finding that one or several of the Plaintiffs' last date of employment with Constructors was prior to December 1999 and that the bodily injury, if any, was not caused by post-policy exposure, but rather caused by exposure during the policy period. There can be no determination of Eagle's obligation to indemnify Constructors until there is a final determination of (1) if and when Plaintiffs were exposed to asbestos, which are still disputed issues of material fact in this case, and (2) whether any post-policy period exposure caused their injuries, which again is a material disputed fact. Because we find genuine disputes of material facts exist in this case, the trial court erred in granting summary judgment in favor of Eagle.

12

Accordingly, we reverse the decision of the trial court granting summary judgment finding no duty to defend and no coverage under the policy.

## DECREE

Based on the foregoing review of the record, we affirm the decision of the trial court finding Plaintiffs' exclusive remedy is in workers' compensation. We reverse the decision of the trial court granting Eagle's motion for summary judgment finding Eagle had no duty to defend Constructors against Plaintiffs' claims and no coverage under the policy. All costs of this appeal are divided equally among the parties.

**AFFIRMED, IN PART;**
**REVERSED, IN PART.**

COURT OF APPEAL, THIRD CIRCUIT
STATE OF LOUISIANA

JIMMY VIDRINE, ET AL.

VERSUS

CONSTRUCTORS INC., ET AL.

(consolidated with)

NUMBER 06-545

COURT OF APPEAL, THIRD CIRCUIT
STATE OF LOUISIANA

SPENCER BERTRAND, ET AL.

VERSUS

ROBERT MOORE, ET AL.

AMY, J., concurring in part, dissenting in part.

I agree with the majority that summary judgment was appropriately entered in favor of Constructors and Cleco on the intentional tort issue. However, I respectfully dissent from the reversal of the summary judgment entered declaring that the Eagle policy offers neither coverage nor a duty to defend.

The Eagle policy period is listed as "1/1/99 to 1/1/00" and contains the following provision:

> **A.    How This Insurance Applies**
> This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.
>
>      . . . .
>
> 2.    Bodily injury by disease must be caused or aggravated by the conditions of your employment. *The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.*

(Emphasis added.)

In addressing the duty to defend, the Louisiana Supreme Court has explained that:

> [T]he duty to defend under an insurance agreement is broader than the scope of the duty to provide coverage. *Steptore v. Masco Constr. Co.*, 93-2064 (La. 8/18/94), 643 So.2d 1213, 1218. A court must examine the well-pleaded allegations of the plaintiff's petition to determine whether the plaintiff's allegations "unambiguously exclude[]" coverage. *Id.* Unless unambiguous exclusion of all of the plaintiff's claims is shown, the duty to defend arises. *Id.* Thus, the duty to defend does not depend upon the outcome of the suit, as it does where the purported source of the duty is an indemnity agreement; rather, where the pleadings disclose "even a possibility of liability" under the contract, the duty is triggered. *Id.*

*Suire v. Lafayette City-Parish Consolidated Government*, 04-1459, p. 18 (La. 4/12/05), 907 So.2d 37, 51-52.

After reviewing the plaintiffs' petitions in light of the above-standard, I find that the summary judgment was appropriately entered in favor of Eagle. The petition in *Vidrine* alleges that:

> Petitioners show that sometime *in early February of 2000,* the exact date being unknown, certain white powdery material was uncovered at the work site and inquiries were made, out of an abundance of caution, as to the nature of the material in which various workers were performing their duties, especially if the material was asbestos . . .
>
> . . . .
>
> Petitioners show that other areas of the work site were covered in a white, powdery material and *in March, April, May and June of 2000,* the material was virtually everywhere and workers were removing it by hand in plastic trash bags and were covered in the material but were offered no protective gear of any type. Petitioners show that there were two distinct operations, one for Unit 6 and one for Unit 7 and that asbestos was present on both of the work sites.

(Emphasis added.) In *Bertrand,* the plaintiffs allege:

> On December 12, 1999 on a daily basis through the last date any work was performed by the Plaintiffs as employees of Constructors, Inc., *the petitioners herein were exposed to foyable [sic] asbestos until after February 2, 2000*, resulting in individuals requiring medical care.

2

(Emphasis added.)

Both petitions allege exposure after the January 1, 2000 expiration date of the Eagle policy. As noted above, the workers' compensation policy provided coverage for bodily injury by disease caused or aggravated by employment. However, "*[t]he employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.*" Thus, when the allegations of the plaintiffs' petitions are accepted, *see Suire*, 907 So.2d 37 and *Steptore v. Masco Constr. Co.*, 93-2064 (La. 8/18/94), 643 So.2d 1213, 1218, coverage under the policy is unambiguously excluded and no corresponding duty to defend exists. The trial court correctly entered Eagle's motion for summary judgment.

Neither do I find merit in Constructors' claim that, notwithstanding the duty to defend question, genuine issues of material fact exist with regard to the policy's coverage. Again, the policy language precludes Constructors' argument in this regard. Insofar as exposure has been alleged, the policy language as to its term of applicability excludes coverage.

For these reasons, I would affirm the summary judgment entered in favor of Eagle.

3